Paul David PAULSON, Appellant,

v.

The STATE of Texas.

No. 829–99.

Court of Criminal Appeals of Texas.

Oct. 4, 2000.

Joseph Salhab, Houston, for appellant.

Jeri Yenne, Dist. Atty., David Bosserman, Asst. Dist. Atty., Angleton, Betty Marshall, Asst. State's Atty., Matthew Paul, State's Atty., Austin, for State.

## OPINION

KEASLER, J., delivered the opinion of the Court, in which McCORMICK, P.J., and MANSFIELD, KELLER, and WOMACK, J.J., joined.

At Paulson's misdemeanor theft trial, the judge did not give the jury the reason-

able doubt definition that *Geesa v. State* [1] requires. Although Paulson neither requested the jury instruction nor objected to its omission at trial, he argued on appeal that *Geesa* and *Reyes v. State* [2] require reversal. The Court of Appeals "reluctantly" agreed and remanded the case for a new trial.[3] The State now asks us to reconsider *Reyes* and portions of *Geesa*. We overrule that part of our decision in *Geesa* that required an instruction on the definition of reasonable doubt. We also overrule *Reyes* in its entirety.

## Historical Background

In our 1991 *Geesa* decision, we held for the first time that trial courts must define reasonable doubt in their jury charges.[4] Until then, we had neither required nor encouraged any reasonable doubt instruction at all.[5] On the contrary, we had said that "the language of the statute on reasonable doubt needs no amplification or attempt on the part of the trial court to explain the term." [6] Furthermore, we had said that since the term had a commonly accepted meaning, "[i]t is not proper for the court to discuss what reasonable doubt is. The jury is as competent to determine that as the court." [7]

Despite over one hundred years of precedent to the contrary, we nevertheless held in *Geesa* that a definition was not only permissible, but mandatory. Then in 1996, we held that whether it is requested or not, failure to submit the *Geesa* instruction

to the jury constitutes "automatic reversible error," [8] thereby making it immune from harm analysis.

In the years since *Geesa*, judges on this Court have expressed their reservations about the reasonable doubt instruction. Judge Meyers stated in his concurring opinion in *Reyes* that automatic reversal could not "be avoided after our unequivocal language in *Geesa v. State* ... Such a result may, however, compel a majority of this Court to reexamine *Geesa* in the future and, were that to happen, I might very well join them in that endeavor." [9] Two years later, Judge Womack also expressed dissatisfaction with the *Geesa* instruction in his concurring opinion in *State v. Toney*.[10] Judge Womack noted that the instruction was "unnecessary and confusing, the justification [*Geesa*] gave for requiring an instruction was fallacious, and [the instruction] was not a legitimate exercise of the judicial function." [11]

## Stare Decisis

 We should not frivolously overrule established precedent. We follow the doctrine of *stare decisis* to promote judicial efficiency and consistency, encourage reliance on judicial decisions, and contribute to the integrity of the judicial process.[12] But if we conclude that one of our previous decisions was poorly reasoned or is unworkable, we do not achieve these

1. 820 S.W.2d 154 (Tex.Crim.App.1991).

2. 938 S.W.2d 718 (Tex.Crim.App.1996).

3. *Paulson v. State,* 991 S.W.2d 907 (Tex. App.—Houston [14 th Dist.] 1999).

4. 820 S.W.2d at 162.

5. *Marquez v. State,* 725 S.W.2d 217, 241 (Tex. Crim.App.1987); *Pierce v. State,* 159 Tex. Crim. 504, 265 S.W.2d 601, 602 (1954); *Marshall v. State,* 76 Tex.Crim. 386, 175 S.W. 154, 155 (1915).

6. *Whitson v. State,* 495 S.W.2d 944, 946 (Tex. Crim.App.1973).

7. *Abram v. State,* 36 Tex.Crim. 44, 45, 35 S.W. 389, 390 (1896).

8. *Reyes,* 938 S.W.2d at 721.

9. *Reyes,* 938 S.W.2d at 722 (Meyers, J., concurring).

10. 979 S.W.2d 642 (Tex.Crim.App.1998)(Womack, J., with three judges, concurring).

11. *Id.* at 650.

12. *See Proctor v. State,* 967 S.W.2d 840, 845 (Tex.Crim.App.1998).

goals by continuing to follow it.[13] Our decision in *Geesa* requiring trial courts to instruct juries on the definition of reasonable doubt was poorly reasoned.

## The *Geesa* Jury Instruction

The six paragraph jury instruction mandated by *Geesa*[14] is the essence of redundancy. The following quotation is distilled from that instruction:

"[No] person may be convicted of an offense unless each element is proved beyond a reasonable doubt ... The presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt ... The prosecution has the burden of proving the defendant guilty, and it must do so by proving each and every element of the offense charged beyond a reasonable doubt, and if it fails to do so, you must acquit the defendant ... It is required that the prosecution's proof excludes all 'reasonable doubt' concerning the defendant's guilt ... In the event you have a reasonable doubt as to the defendant's guilt ... you will acquit him and say by your verdict 'Not guilty.' "

If repetition were *Geesa*'s only flaw, perhaps we could continue to follow it. But the required jury instruction goes further. It attempts to define reasonable doubt three times:

- "A reasonable doubt is a doubt based on reason and common sense after a careful and impartial consideration of all the evidence in the case."

- "It is the kind of doubt that would make a reasonable person hesitate to act in the most important of his own affairs."

- "Proof beyond a reasonable doubt therefore must be proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs."

The first definition is useless. It is like saying "A white horse is a horse that is white." The second definition and what purports to be the third definition are more troubling because the use of "hesitation" is ambiguous.

In addition, the third "definition" is not really a definition at all. Instead, it is a fallacious application of the second definition. The court says that reasonable doubt makes you hesitate to act; therefore, if you hesitate to act, you have a reasonable doubt. That is like saying, "Pneumonia makes you cough; therefore, if you cough, you have pneumonia." This is the logical fallacy called "affirming the consequent."

If a conscientious juror reads the *Geesa* charge and follows it literally, he or she will never convict anyone. Considerations utterly foreign to reasonable doubt might make a person hesitate to act. The gravity of the decision and the severity of its consequences should make one pause and hesitate before doing even what is clearly and undoubtedly the right thing to do. Judgments that brand men and women as criminals, and take their money, their liberty, or their lives are deadly serious. They are decisions that make us hesitate if we have any human feelings or sensitivity at all. So to convict, a juror must either ignore the definition, refuse to follow it, or stretch it to say something it does not say.

## Constitutional Implications

The *Geesa* court said that *Jackson v. Virginia*[15] and *Holland v. United States*[16] "implicated the requirement of a full definitional instruction to the jury on reason-

---

**13.** *See id.*

**14.** *See Appendix.*

**15.** 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**16.** 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954).

able doubt." [17] But in 1994, the Supreme Court held in *Victor v. Nebraska*,[18] that "the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course." [19] Citing *Jackson v. Virginia,* the Court concluded, "indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." [20] It is ill-advised for us to require trial courts to provide the jury with a redundant, confusing, and logically-flawed definition when the Constitution does not require it, no Texas statute mandates it, and over a hundred years of pre-*Geesa* Texas precedent discourages it.

### Conclusion

■ We specifically overrule that portion of *Geesa* which requires trial courts to instruct juries on the definition of "beyond a reasonable doubt." We also overrule *Reyes.* We find that the better practice is to give no definition of reasonable doubt at all to the jury.[21] On the other hand, if both the State and the defense were to agree to give the *Geesa* instruction to the jury, it would not constitute reversible error for the trial court to acquiesce to their agreement. We therefore reverse the Court of Appeals' decision and affirm the judgment of the trial court.

KELLER, J., delivered a concurring opinion.

HOLLAND, J., delivered a concurring opinion, in which JOHNSON, J., joined.

MEYERS, J., delivered a dissenting opinion, in which, PRICE, J., joined.

PRICE, J., delivered a dissenting opinion.

17. 820 S.W.2d at 161.

18. 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994).

19. *Id.* at 5, 114 S.Ct. at 1243.

### APPENDIX

All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that a person has been arrested, confined, or indicted for, or otherwise charged with, the offense gives rise to no inference of guilt at his trial. The law does not require a defendant to prove his innocence or produce any evidence at all. The presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after a careful and impartial consideration of all the evidence in the case.

The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense beyond a reasonable doubt, and if it fails to do so, you must acquit the defendant.

It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all "reasonable doubt" concerning the defendant's guilt.

A "reasonable doubt" is a doubt based on reason and common sense after a careful and impartial consideration of all the evidence in the case. It is the kind of doubt that would make a reasonable person hesitate to act in the most important of his own affairs.

Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs.

20. *Ibid.*

21. *See* "Reasonable Doubt: An Argument Against Definition," 108 *Harv. L.Rev.* 1955.

In the event you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you and these instructions, you will acquit him and say by your verdict "Not guilty."

*Geesa v. State*, 820 S.W:2d 154, 162 (Tex. Crim.App.1991).

KELLER, J., delivered a concurring opinion.

Judge Meyers criticizes the Court for what he perceives to be an abandonment of the principle of *stare decisis*, claiming that "judicial conservatism is no longer in vogue." To the contrary, it was the *Geesa*[1] court that failed to consider "the work of the great men" who preceded the Court, "consistent, coherent, and undoubted."[2] In *Geesa*, this Court overruled more than one hundred years of precedent[3] without even a passing nod to *stare decisis*.

In determining whether precedent should be overruled, we should take into account whether the decision under consideration was itself a violation of the principles of *stare decisis*. In such circumstances, a judicially conservative court should bear in mind the consistent body of caselaw preceding the anomalous opinion when considering the application of *stare decisis* to the case at hand.

I join the opinion of the Court.

HOLLAND, J., delivered a concurring opinion in which JOHNSON, J., joined.

I concur in the majority's decision to overrule the part of *Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App.1991) that concluded it was necessary to instruct juries on the definition of reasonable doubt. I also concur in the majority's decision to overrule *Reyes v. State*, 938 S.W.2d 718, 721 (Tex.Crim.App.1996). I write only to

express additional reasons in support of these decisions.

### I.

Since this Court handed down its opinion in *Geesa*, members of this Court have subsequently questioned the wisdom of adopting the reasonable doubt instruction. In his concurring opinion in *Reyes*, Judge Meyers stated that the result in *Reyes* could not "be avoided after our unequivocal language in *Geesa v. State*, .... Such a result may, however, compel a majority of this Court to reexamine *Geesa* in the future and, were that to happen, I might very well join them in that endeavor." *Reyes*, 938 S.W.2d at 722 (Meyers, J., concurring). Judge Meyer's opinion in *Reyes* indicated that the issue of the continued viability of the *Geesa* instruction was not settled. *See* Shirley Baccus–Lobel and Gary Alan Udashen, *Criminal Procedure: Pretrial, Trial and Appeal*, 51 SMU L.Rev. 855, 871 (1998).

Two years later, Judge Womack followed Judge Meyers's suggestion in *Reyes* and reexamined the *Geesa* instruction in his concurring opinion in *State v. Toney*, 979 S.W.2d 642 (Tex.Crim.App.1998)(Womack, J., with three judges, concurring). He proposed that this Court should overrule the parts of *Geesa* "that require this misbegotten definition of 'reasonable doubt.'" *Id.* at 652.

This Court should not frivolously overrule established precedent. We should generally endeavor to follow the doctrine of *stare decisis* to promote judicial efficiency and consistency, foster reliance on judicial decisions, and contribute to the actual and perceived integrity of the judicial process. *See Proctor v. State*, 967 S.W.2d 840, 844 (Tex.Crim.App.1998). When this Court, however, comes to the conclusion that one of its prior decisions was poorly

---

**1.** *Geesa v. State*, 820 S.W.2d 154 (Tex.Crim. App.1991).

**2.** *Paulson v. State*, at 579 (2000)(Meyers, J. dissenting).

**3.** *See State v. Toney*, 979 S.W.2d 642, 650–651 (Tex.Crim.App.1998)(Womack, J. dissenting) and cases cited therein; *see also Geesa*, 820 S.W.2d at 161 n. 10.

reasoned, or has proven to be unworkable in the lower courts, it would not promote ·or preserve the integrity of the judicial process to leave that prior decision intact. *See id.* I believe this Court's adoption of an instruction on the definition of reasonable doubt should be overruled in deference to analogous federal decisions, which were more soundly reasoned than our decision in *Geesa. See Awadelkariem v. State,* 974 S.W.2d 721, 725 (Tex.Crim.App.1998).

### II.

In *Geesa,* this Court claimed that it was "evident that [*Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954) and *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)] implicated the requirement of a full definitional instruction to the jury on reasonable doubt." 820 S.W.2d at 161. An examination of decisions by the federal courts reveals that there was no explicit support for an instruction on the definition of reasonable doubt before the *Geesa* decision, regardless of this Court's perceived implications of the holdings in *Holland,* or *Jackson v. Virginia.*

Thirteen years before this Court handed down *Geesa,* and after *Holland* had become part of the common law, the Fifth Circuit Court of Appeals reviewed a conviction wherein a Federal District Court instructed a jury on a definition of reasonable doubt.[1] *See U.S. v. Rodriguez,* 585 F.2d 1234 (5th Cir.1978). The Fifth Circuit disapproved of the attempt to define or explain the phrase "beyond a reasonable doubt." "There is no want of jurisprudence with respect to how the reasonable doubt standard may be explained.... Little new can, or should, be added ·after 200 years of judicial use of the same term." *Id.* at 1241. The Fifth Circuit also warned of the pitfalls of attempting to define the

term. "We underscore the gravity of misstating this 'bedrock axiomatic and elementary principle' whose enforcement lies at the foundation of our criminal law." *Id.* at 1241.

Nine years later, and eight years after *Jackson v. Virginia* had become part of the common law, the Fifth Circuit Court of Appeals revisited the issue when it reviewed a death penalty conviction out of this State. *See Thompson v. Lynaugh,* 821 F.2d 1054, 1061 (5th Cir.1987). The Fifth Circuit concluded that,

> although the jury must be instructed that the State bears the burden of proving the defendant's guilt beyond a reasonable doubt, attempts by trial courts to define "reasonable doubt" have been disfavored by this Court. Such attempts often result in using the term itself in the definition and serve only to confuse the concept in the minds of the jurors.

From the *Rodriguez* and *Thompson* decisions, it is clear that the Fifth Circuit did not favor the notion that juries should be instructed on the definition of reasonable doubt.

### III.

The pre-*Geesa* decisions of the Fifth Circuit, in addition to the explicit wording of the Supreme Court in *Victor v. Nebraska,* 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994)[2], demonstrate that this Court erroneously relied on the "implications" of the decisions in *Holland* and *Jackson v. Virginia* when we concluded in *Geesa* that it was necessary to instruct juries on the definition of beyond a reasonable doubt. Furthermore, when I consider the phrase "beyond a reasonable doubt," I wonder why the phrase would need any explanation or definition at all. The small benefit, if any, which might possibly be gained by

---

1. The trial court instructed the jury:
 A reasonable doubt means a doubt that is based on reason and common sense. Such doubt must be substantial rather than speculative.

*U.S. v. Rodriguez,* 585 F.2d 1234, 1240 (5th Cir.1978).

2. *See ante* at 573.

defining or explaining the phrase is overwhelmed by the confusion resulting from the attempt to define the phrase. One commentator observed that the phrase had been left without a definition for so many years to avoid confusing the jury.

> One must assume the [Court of Criminal Appeal]'s conscious exclusion [of a definition of "beyond a reasonable doubt] was for a valid reason—perhaps inclusion of such a definition would over-complicate a jury's thought process and fail to give jury members credit for some rational thought process.

John J. Lapham, *Criminal Law—Reasonable Doubt Definitional Instruction*, 23 St. Mary's L.J. 1195, 1201 (1992).

The members of the average jury possess sufficient collective knowledge and common sense to be able to fairly and accurately apply the phrase without the benefit of a court's definition. "The 'reasonable doubt' standard serves to prevent a finding of guilt unless the evidence dispels those doubts that would be entertained by that most useful construct of law—the reasonable person—in this instance, a group of twelve reasonable persons who form a reasonable jury." Jon O. Newman, *Beyond "Reasonable Doubt"*, 68 N.Y.U. L.Rev. 979, 983 (1993).

Moreover, the reasonable doubt instruction is phrased in a way that would only confuse a jury that would otherwise be able to understand and apply the burden of proof. First, the *Geesa* definition uses the concept of hesitation in order to distinguish a reasonable doubt from all others in an internally contradictory manner. On one hand, the instruction states that a doubt is considered reasonable if it caused a reasonable person to "hesitate to act in the most important of his own affairs." This effectively asks the jury to assess the reasonableness of the doubt by whether it would provoke them to inaction. But, as the *Geesa* court noted in the next paragraph, the jury is told to assess the reasonableness of the doubt by whether it

would be sufficient to provoke them to action. The definition does so by instructing them that proof "beyond a reasonable doubt" must be so convincing that "you" would act upon it without hesitation in those same important personal affairs. This use of the concept of hesitation is dangerously ambiguous. What would a jury do if they encountered a doubt that caused them to hesitate to act? "Should they decline to convict because they have reached a point of hesitation, or should they simply hesitate, then ask themselves whether, in their own private matter, they would simply resolve the doubt in favor of action, and, if so, continue on to convict?" *Id.* at 983.

Secondly, the references in the *Geesa* instruction to the personal matters of the jurors in defining whether they would hesitate to act, or act without hesitation, stands the risk of trivializing the constitutional standard as well as the importance of the work which the jury is doing. In *U.S. v. Noone*, 913 F.2d 20, 28–29 (1st Cir.1990), *cert. denied* 500 U.S. 906, 111 S.Ct. 1686, 114 L.Ed.2d 81 (1991), the First Circuit Court of Appeals criticized an instruction which used the phrase "a matter of importance in his or her personal life." "The momentous decision to acquit or convict a criminal defendant cannot be compared with ordinary decision-making without risking trivialization of the constitutional standard.... We admonish against the use of any such instruction, as an altogether unnecessary embellishment that risks juror misunderstanding of the reasonable doubt standard." *Id.* It cannot be predicted what an individual juror might believe was the "most important of his or her own personal affairs," especially when the *Geesa* instruction mandates that each of them conceive of what he or she believes is an important affair.

Lastly, I believe the wording of the *Geesa* instruction could confuse jurors into applying a reduced burden of proof on the State to prove its case. In the instruction, jurors are informed that a reasonable

doubt is a "doubt based on reason." "A juror hearing the 'doubt based on reason' formulation might think that a generalized unease or skepticism about the prosecution's evidence is not a valid basis to resist entreaties to vote for conviction. This is probably a distortion of the concept the courts are seeking to implement. ... The standard ought not to mean that a doubt is reasonable only if the juror can articulate to himself or herself some particular reason for it." Newman, *supra* at 983. The *Geesa* instruction confuses the concept of "proof beyond a reasonable doubt," and it does not assist the trier of fact in the application of the burden of proof to the evidence at trial.

## IV.

The constitutional standard of "proof beyond a reasonable doubt" needs no embellishment. For years, the standard conveyed to jurors the fact that they could not convict a fellow citizen without reaching the subjective state of near certitude of the guilt of that citizen. *See id.* at 984. The Supreme Court acknowledged in *Victor v. Nebraska* that a definition of reasonable doubt is not necessary under the Constitution. I believe the *Geesa* instruction is flawed by its own internal contradictions, confused phrasing and trivialization of the constitutional standard.

For the reasons set out above, I concur in the judgment of the majority.

MEYERS, J., delivered this dissenting opinion, joined by PRICE, J.

The majority overrules *Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App.1991), on the ground that it is "poorly reasoned." This is an insufficient basis upon which to overrule precedent. Moreover, the majority's criticism of *Geesa* is not convincing. I would decline the State's invitation to overrule *Geesa*, but, in light of the Court's irreconcilable opinion in *Cain v. State*, 947 S.W.2d 262 (Tex.Crim.App.1997), would overrule *Reyes v. State*, 938 S.W.2d 718 (Tex.Crim.App.1996) and disavow some of our language in *State v. Toney*, 979 S.W.2d 642 (Tex.Crim.App.1998).

## I.

The majority overrules *Geesa* solely because it views *Geesa* as having been "poorly reasoned." *Majority opinion* at 572. The United States Supreme Court recently indicated that disagreement with the reasoning of a prior opinion is not enough to justify overruling it:

> *Whether or not we would agree with Miranda's reasoning and its resulting rule, were we addressing the issue in the first instance,* the principles of stare decisis weigh heavily against overruling it now. While " 'stare decisis is not an inexorable command,' " particularly when we are interpreting the Constitution, "even in constitutional cases, the doctrine carries such persuasive force that we have always required a departure from precedent to be supported by some 'special justification.' "

*Dickerson v. United States,* —— U.S. ——, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (emphasis added) (citations omitted). The "poorly reasoned" test stands in stark contrast to the "*series* of prudential and pragmatic considerations" the Supreme Court has said ought to be considered in overruling precedent:

> whether the rule has proven to be intolerable simply in defying practical workability, ... whether the rule is subject to a kind of reliance that would lend a special hardship to the consequences of overruling and add inequity to the cost of repudiation, ... whether related principles of law have so far developed as to have left the old rule no more than a remnant of abandoned doctrine, ... or whether facts have so changed, or come to be seen so differently, as to have robbed the old rule of significant application or justification.

*Planned Parenthood of Southeastern Pennsylvania v. Casey,* 505 U.S. 833, 854, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992).

While the Court today makes no attempt to consider anything other than its own disagreement with *Geesa*'s reasoning, this Court has previously viewed consistency in the law as one of the critical considerations on the question of overruling precedent:

> Those interests [underlying the rule of *stare decisis*] have much less force ... when the precedent itself fails to produce consistency. When older precedent conflicts with a newer decision that is found to be more soundly reasoned, we may resolve the inconsistency in favor of the more soundly reasoned decision. .... And, in determining whether to retain or reject a particular rule of law, we may consider whether justifications proffered for the rule have been undercut with the passage of time.

*Awadelkariem v. State*, 974 S.W.2d 721, 725 (Tex.Crim.App.1998) (citations omitted); *see also Busby v. State*, 990 S.W.2d 263, 267 (Tex.Crim.App.1999)(declining invitation to overrule precedent, court stated, "doctrine of stare decisis indicates a preference for maintaining consistency even if a particular precedent is wrong"), *cert. denied*, —— U.S. ——, 120 S.Ct. 803, 145 L.Ed.2d 676 (2000). Serious lack of practical workability of the established precedent, inconsistency with related developments in the law, and diminishing importance or viability in light of developing law are key considerations that ought *all* be considered in questioning precedent.

The prior court's logic or reasoning should be given little, if any, consideration. *Casey* does not even mention such factor. The problem with the "poorly reasoned" standard is that it allows for overruling precedent based upon nothing more than a change in the Court's membership.[1] Restated, the test is really, "would a current majority on the Court have voted for the prior opinion?" If not, it is "poorly reasoned" and may be overruled. This Court

long ago recognized the threat to judicial integrity when the viability of precedent depends upon the personal viewpoint of the current court membership:

> Where this court has held for a number of years to a given construction of the law, we feel bound thereby, and, if any change is to be made in the rule of decision adhered to for any great length of time, this is to be exercised by the legislative branch of the government, and not this court. *We have followed, and are now following, the decisions of this court in many instances where we think it for the best interest of the state that the law was otherwise than as held by this court; yet, as we have heretofore said, the bar and the people of this state are entitled to know what is the law, and that it should not be subject to change by the mere opinion of one who is fortunate enough to be elected to this high position.* As said in the Lewis Case, [*Lewis v. State*, 58 Tex.Crim. 351,] 127 S.W. 808: "For the reasons given here, we feel that at this late date to sweep aside the established rule and unsettle the law still further would be, if not judicial usurpation, at least without sufficient warrant in law and utterly inexcusable, and to proclaim ourselves as unworthy to sit on this high tribunal. It should never be forgotten that this is a land where the law reigns supreme." Uniformity and certainty of decision is of the highest importance. *We are not so much to declare our personal views of what the law ought to be, but to lay down with as much definiteness and certainty as may be what it is, and, when so adjudged, to enforce it with inflexible fidelity, without passion, and without weakness.* If, coming to this high position of power and responsibility, I may, moved by a mere personal opinion, in my day and time, unsettle and undo the work of the great men who

---

1. Although *Geesa* was decided just nine years ago, only one judge who voted for the opinion remains on the Court today. *Geesa*, supra (authored by Maloney, J., joined by McCor-

mick, P.J., White, Campbell, Miller, Overstreet, Baird, and Benevides, J.J.. Clinton, J., dissented).

have preceded me, consistent, coherent, and undoubted from the day when I was yet a briefless lawyer, the man who on the morrow takes my place will have the same warrant to undo and unsettle the rules we establish, and so on to the end of time.

*Morris v. State,* 64 Tex.Cr.R. 498, 142 S.W. 876, 877 (1912) (emphasis added). This type of judicial conservatism is no longer in vogue.

Turning to what have traditionally been appropriate factors for consideration on the question of overruling precedent, *Casey,* supra; *Awadelkariem,* supra, none of these considerations weigh in favor of overruling *Geesa.* The required definition has not "proven to be intolerable simply in defying practical workability." To the contrary, *Geesa* promotes consistency among the trial courts and circumvents conflict between the parties. Moreover, submission of a proper *Geesa* instruction precludes the possibility that the case would be reversed due to a constitutionally deficient definition.[2] *See Sullivan v. Louisiana,* 508 U.S. 275, 282, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)(constitutionally deficient reasonable-doubt definition given in jury charge is "structural error" and thus not amenable to harmless error analysis).

Neither does *Geesa* present an inconsistency with developing law. Thus, absent some indication that *Geesa* has presented a real problem in terms of practical application or some evidence that developing law

is at irreconcilable odds with *Geesa,* it ought not be overruled.

Some of *Geesa*'s lineage, however, is problematic enough to necessitate reconsideration. *Casey,* 505 U.S. at 854, 112 S.Ct. 2791 ("[t]he obligation to follow precedent begins with necessity, and a contrary necessity marks its outer limit"). *Geesa* itself did not speak to the issue of whether a harm analysis would be appropriate in the event of error thereunder. This issue was expressly addressed in *Reyes, supra,* which held that failure to comply with *Geesa* was not subject to a harm analysis. In *Reyes,* the Court reasoned that *Geesa* error is immune from a harm analysis because it viewed the *Geesa* instruction as an "absolute, systemic requirement." We subsequently held in *Cain, supra,* that even error related to these types of features is not categorically immune from a harm analysis. *Cain,* 947 S.W.2d at 264 (even jurisdictional errors are not categorically immune from harm analysis). The only type of error categorically immune from a harmless error analysis is federal constitutional error labeled as "structural" by the United States Supreme Court. *Id.* The *Geesa* instruction is not constitutionally required, and thus a failure to give such instruction does not by any stretch fall within this narrow class of errors. *Reyes* and *Cain* are at irreconcilable odds and cannot both be retained. I would overrule *Reyes* in light of *Cain*[3]

2. In the absence of a pattern definition, trial courts, and ultimately appellate courts, will be faced time and again with substantial debate on endless varieties of definitions that may or may not be constitutionally acceptable. This debate carries substantial risk, given that a constitutionally deficient definition is "structural error" and automatically reversible.

3. In holding that the *Geesa* instruction is an absolute, systemic requirement, the Court in *Reyes* pointed to the language in *Geesa* directing that the definition "shall" be submitted in "all" criminal cases, "even in the absence of an objection or request" by the parties. *Reyes,* 938 S.W.2d at 721. We further emphasized that the *Geesa* definition was fash-

ioned to ensure proper implementation of the constitutional requirement that a conviction cannot stand without proof beyond a reasonable doubt, a requirement which is "so fundamental to the proper functioning of our adjudicatory process as to enjoy special protection in the system." *Id.* n. 7 (quoting *Marin,* 851 S.W.2d at 278). While the constitutional requirement of proof beyond a reasonable doubt is a systemic and nonwaivable feature of our system, the explanation of what that standard means does not share the same status with the underlying constitutional principle. Admittedly, *Geesa*'s directive that the definition be submitted in "all criminal cases" suggests that the instruction cannot be waived. However, the Court's modification of that directive with the further explanation, "even in the

Further, *Toney's* attempt to harmonize *Geesa, Reyes* and *Cain,* while a well-intentioned effort to preserve precedent, is not logically defensible. The Court's statement in *Toney* that a complete failure to give a *Geesa* instruction is not subject to a harm analysis cannot be harmonized with *Cain's* directive that no error is immune from a harm analysis.[4] I would disavow this statement and hold that *Geesa* error is charge error and, not being constitutional in nature, is subject to a harmless error analysis under *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1984)(Op. on reh'g), *cert. denied,* 481 U.S. 1019, 107 S.Ct. 1901, 95 L.Ed.2d 507 (1987).

## II.

The majority says *Geesa* is poorly reasoned because the definitional instruction is (1) "redundant, confusing and logically flawed" and "useless," "ambiguous" and "fallacious" and (2) not constitutionally required. This is harsh criticism considering a good portion of the *Geesa* instruction is based upon the definitions recommended by at least five federal circuits.

The majority criticizes the following portion of the instruction as "useless": "a reasonable doubt is a doubt based on reason and common sense after a careful and impartial consideration of all the evidence in the case." According to the majority, this "is like saying '[a] white horse is a horse that is white.'" *Majority opinion* at 572. But a number of federal circuits incorporate this instruction into their recommended definitions. 1 Federal Jury Practice and Instructions § 12.10 at 363 (West 1992) (Pattern Jury Instructions of the District Judges Association of the Fifth Circuit, Criminal Cases, Instruction No. 1.06 (1990) stating, "A 'reasonable

doubt' is a doubt based upon reason and common sense after careful and impartial consideration of all the evidence in the case"); *id.* at 365 (Pattern Jury Instructions of the District Judges Association of the Sixth Circuit, Instruction No. 1.03 (1991), stating "A reasonable doubt is a doubt based on reason and common sense"); *id.* at 369 (Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit, Instruction No. 3.11 (1992), stating, "A reasonable doubt is a doubt based upon reason and common sense, and not the mere possibility of innocence"); *id.* at 372 (Pattern Jury Instructions of the District Judges Association of the Eleventh Circuit, Criminal Cases, Basic Instruction No. 3 (1985), stating, "A 'reasonable doubt' is a real doubt, based upon reason and common sense after careful and impartial consideration of all the evidence in the case"); 1 Federal Jury Practice and Instructions § 12.10 at 81 (West Supp.1997)(Manual of Model Criminal Jury Instructions for the Ninth Circuit, Instruction No. 3.3 (1997), stating, "A reasonable doubt is a doubt based upon reason and common sense and is not based purely on speculation"). Because there are reasonable minds who do not view this instruction as "useless," this is a perfect example of why the "poorly reasoned" test should not carry the day.

The majority dislikes the instruction's following discussion of "hesitation":

[A reasonable doubt] is the kind of doubt that would make a reasonable person hesitate to act in the most important of his own affairs.

Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that you would be will-

absence of an objection or request" could be read as allowing room for the possibility of an express waiver.

*Reyes* was undoubtedly wrong in characterizing the *Geesa* instruction as an absolute, systemic requirement. It is more likely a right that is expressly waivable. A "waivable only" right is one that the trial judge has an

independent duty to implement, even without a request.

**4.** *Toney* would need not be overruled, as it was decided correctly on its facts, holding that the error in giving a partial *Geesa* instruction was subject to a harmless error analysis.

ing to rely and act upon it without hesitation in the most important of your own affairs.

The first portion of this instruction is similar to the preferred instruction of a number of federal courts. 1 Federal Jury Practice and Instructions § 12.10 at 363 (West 1992) (Pattern Jury Instructions of the District Judges Association of the Fifth Circuit, Criminal Cases, Instruction No. 1.06 (1990) stating, "Proof beyond a reasonable doubt, therefore, is proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs"); *id.* at 365 (Pattern Jury Instructions of the District Judges Association of the Sixth Circuit, Instruction No. 1.03 (1991), stating "Proof beyond a reasonable doubt means proof which is so convincing that you would not hesitate to rely and act on it in making the most important decisions in your own lives"); *id.* at 369 (Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit, Instruction No. 3.11 (1992), stating, "A reasonable doubt is the kind of doubt that would make a reasonable person hesitate to act"); *id.* at 372 (Pattern Jury Instructions of the District Judges Association of the Eleventh Circuit, Criminal Cases, Basic Instruction No. 3 (1985), stating, "Proof beyond a reasonable doubt, therefore, is proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs").

The majority says the second "hesitation" instruction is a "fallacious application" of the previous "hesitation" instruction. Their only support for this criticism is to say that the instruction "is like saying, 'Pneumonia makes you cough'; therefore, if you cough, you have pneumonia." *Majority opinion* at 572. This illustration does not accurately parallel the definition and is not enough basis upon which to conclude the entire instruction ought to be thrown out.[5]

Finally, the majority suggests that a Supreme Court holding in 1994 that the Constitution neither requires nor prohibits defining reasonable doubt is inconsistent with *Geesa,* implying that *Geesa* rested on constitutional grounds. *Majority opinion* at 573. But *Geesa* recognized its rule was "not of constitutional dimension[; rather, it] serve[d] to implement the constitutional requirement that a criminal conviction cannot stand 'except upon proof beyond a reasonable doubt.'" *Geesa,* 820 S.W.2d at 163.

If I had been on the Court at the time *Geesa* was decided, I might not have joined it. Or I might have. A judge's personal affinity for precedent ought to be irrelevant.[6] Today, personal dislike for precedent has become the standard for overruling it. I would reverse the Court

---

5. While the Supreme Court has stated it does not view a definition of reasonable doubt as particularly helpful, it has approved the first "hesitation" explanation given in the *Geesa* instruction. *Holland v. United States,* 348 U.S. 121, 138, 75 S.Ct. 127, 99 L.Ed. 150 (1954). But even if one similar to the second "hesitation" explanation is given, it will not invalidate the instruction if the instruction taken as a whole nonetheless conveys the proper notion of reasonable doubt:

> [The trial judge defined reasonable doubt] as "the kind of doubt ... which you folks in the more serious and important of your own lives might be willing to act upon." We think this section of the charge should have been in terms of the kind of doubt that would make a person hesitate to act, rather than the kind on which he would be willing

to act.... [W]e feel that, taken as a whole, the instructions correctly conveyed the concept of reasonable doubt to the jury.

*Id.*

6. The majority points out that I have previously indicated a willingness to re-consider the viability of *Geesa. Majority opinion* at 571. Of course, I assumed that any re-examination of *Geesa* would take into account the number of considerations appropriate for questioning precedent, as discussed in this opinion. And reconsideration does not necessarily mean overruling. I would also observe that I have become more judicially stodgy during my tenure here, and less inclined to revisit precedent absent *compelling justification.*

of Appeals and remand to that Court to assess harm under *Almanza*. The majority reverses the Court of Appeals and affirms the trial court. For these reasons, I dissent.

PRICE, J., filed a dissenting opinion.

The Fourteenth Amendment's Due Process Clause requires that trial judges instruct jurors that they can only convict a person on proof beyond a reasonable doubt.[1] Today, a majority of this Court holds that trial judges need not define the term reasonable doubt for Texas jurors. Because the Court leaves jurors with no guidance as to the meaning of this critical standard, I dissent.

The majority seems to argue that *Geesa*[2] should be overruled because (1) the definition is seriously flawed, and (2) the U.S. Constitution neither requires nor prohibits defining reasonable doubt.[3] These reasons may justify rewriting the definition, but they do not justify disposing of a definition altogether.

The Supreme Court has neither prohibited nor required that juries receive a definition of the term reasonable doubt. As a result, state and federal courts are divided over whether a definition is required, prohibited, or voluntary.[4] In *Winship*, the Supreme Court explained that the reasonable doubt standard "provides concrete substance for the presumption of innocence"[5] and "is the prime instrument for reducing the risk of convictions resting on factual error."[6] Just because the Supreme Court refuses to provide guidance, does not mean that we should abdicate our responsibility.

Twenty-one years after the Supreme Court decided *Winship*, we held that trial courts must define reasonable doubt in the jury charge.[7] In *Geesa*, we held that a particular definition of reasonable doubt was required. Although this definition has been criticized,[8] I would not hold, as the majority does, that no definition is required. Just because many lawyers can understand and articulate the concept of reasonable doubt, this does not mean that the average juror can understand and apply the concept. The definition is not meant for lawyers, trial judges, and appellate judges; the purpose of the instruction is to assist the jury in making its decision. If the definition does not do that, it should be rewritten.

The majority claims that "the better practice is to give no definition of reasonable doubt at all to the jury."[9] It provides no analysis for this proposition, but merely cites a law review note for this proposition. I think that more is required if we are to overrule *Geesa*'s holding that a definition *must* be given.

The majority notes that the *Geesa* Court overruled more than one hundred years of precedent. This is true, but it is not surprising when one considers that the Supreme Court did not require that guilt be proved beyond a reasonable doubt until 1970. Presumably, the *Geesa* Court took this into consideration when overruling such longstanding precedent.

I will not join in a decision that equips Texas juries with a measuring stick but deprives them of the lines of demarcation

1. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

2. *Geesa v. State*, 820 S.W.2d 154 (Tex.Crim. App.1991).

3. *Ante*, at 572–73.

4. *See generally* Henry A. Diamond, Note, *Reasonable Doubt: To Define, or Not to Define*, 90 Colum. L.Rev. 1716, 1717–21 (1990).

5. *Winship*, 397 U.S. at 363, 90 S.Ct. 1068.

6. *Id.*

7. *See Geesa v. State*, 820 S.W.2d at 162.

8. *Ante*, at 571–72.

9. *Ante*, at 573–74.

that should guide them in measuring the evidence of guilt. I dissent.