NO. 07-02-0415-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

OCTOBER 17, 2003

_____


WILLIAM BRIDGES TYSON, JR., APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE COUNTY COURT OF NEWTON COUNTY;

NO. N2002-6; HONORABLE JOE NED DEAN, JUDGE

_____

Before JOHNSON, C.J., and QUINN and REAVIS, JJ.


**MEMORANDUM OPINION**


Following a plea of not guilty, appellant William Bridges Tyson, Jr. was convicted by a jury of criminal trespass and punishment was assessed by the trial court at 180 days confinement, suspended for two years.  Presenting three issues, appellant contends (1) the complaint did not satisfy the requirements of article 15.05 of the Texas Code of

Criminal Procedure; (2) the evidence is legally insufficient to prove his guilt beyond a reasonable doubt; and (3) the trial court erred in refusing to submit his requested instruction regarding a good faith dispute between the parties. Based upon the rationale expressed herein, we reverse and render a judgment of acquittal.

In 1983, complainant, Thomas T. Gill, built a house located 75 to 100 feet from County Road 1058, which intersects Highway 63. According to his testimony and photographs introduced into evidence, his land is cordoned off by cables and flags, and "no trespassing" signs are posted. On December 30, 2001, Gill noticed appellant and others taking down cables so they could drive through his property to reach the county road. A convoy of vehicles was parked approximately 50 feet from his house. Despite Gill's warning that they were trespassing and his request that they depart, they refused to do so. Gill radioed the Sheriff's Department, but by the time law enforcement arrived, appellant and the others had left. Gill accompanied an officer to the Newton County Sheriff's Office to file charges.[1]

Considering appellant's issues in logical rather than sequential order, we first address issue two by which he contends the evidence is legally insufficient to support his conviction for criminal trespass. It is a fundamental rule of criminal law that one cannot be convicted of a crime unless it is shown beyond a reasonable doubt that the defendant

---

[1]A review of the record indicates other litigation involving disputes with landowners and Newton County regarding whether certain roads are public roads.

committed each element of the alleged offense. U.S. Const. amend. XIV; Tex. Code Crim. Proc. Ann. art. 38.03 (Vernon Supp. 2003); Tex. Pen. Code Ann. § 2.01 (Vernon 2003). In conducting a legal sufficiency review, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d 154, 157 (Tex.Cr.App. 1991), *overruled on other grounds*, Paulson v. State, 28 S.W.3d 570, 573 (Tex.Cr.App. 2000). As an appellate court, we may not sit as a thirteenth juror, but must uphold the jury's verdict unless it is irrational or unsupported by more than a mere modicum of evidence. Moreno v. State, 755 S.W.2d 866, 867 (Tex.Cr.App. 1988).

Before determining whether the evidence is legally sufficient to sustain the conviction, we must review the essential elements the State was required to prove. A person commits criminal trespass if he enters or remains on property of another without effective consent and he (1) had notice the entry was forbidden; or (2) received notice to depart but failed to do so.[2] Tex. Pen. Code Ann. § 30.05(a) (Vernon 2003). The State satisfies its burden of proving the "property of another" element by showing the complainant had a greater right of possession of the property. Arnold v. State, 867 S.W.2d 378, 379 (Tex.Cr.App. 1993) (en banc); Langston v. State, 855 S.W.2d 718, 721

---

[2]Notice may be by oral or written communication, fencing or other enclosure designed to exclude intruders, posted signs, or placement of identifying purple paint marks on trees or posts. Tex. Pen. Code Ann. § 30.05(b)(2) (Vernon 2003).

(Tex.Cr.App. 1993); *see generally* Thompson v. State, 12 S.W.3d 915, 920 (Tex.App.–Beaumont 2000, pet. ref'd) (holding the State need not prove ownership where it pleads the defendant remained on "property of another" rather than explicit ownership in a particular person).[3]

Gill testified the "old skid road" used by appellant was not open to the public. He further testified about a small cemetery designated as Farr Cemetery located one and one-half to two miles from his house and a right-of-way to the cemetery that had been established by the historical commission and the landowners. According to Gill, the landowners did not object to use of their land to access the cemetery; however, he claimed the land was not for public use. While testifying, Gill referred to a map that was admitted into evidence over defense counsel's objection. The map is not drawn to scale nor does it contain any numbered highways or labeled roads.

Minutes of the County Commissioners' meeting of December 10, 2001, were also introduced into evidence. One of the motions on the agenda that passed was to accept a petition and administratively determine that Gilchrist Place Road, Westbrook Sisters Place Road, Farr Cemetery Road, and Mary Helen Road be declared public roads in Precinct Two. Gill, County Commissioner of Precinct Two, voted against the motion. During redirect examination, he testified about the public roads in relation to the location

---

[3]Although the information recites that appellant intentionally or knowingly entered "property of another, namely, Thomas T. Gill," it did not plead ownership in Gill and thus was only required to prove that Gill had a greater right of possession.

of his house; however, his testimony is not easily reconciled with the map introduced into evidence. He testified as follows:

Q. Mr. Gill, any of those roads that were mentioned in the – the document there, any of those roads mentioned, do they cross your property?

A. Not where he was kilt at. The onliest [sic] one that was in question at that time and we talked about it was what they want to call that Farr Cemetery Road.

Q. Okay. Ane [sic] what – where's – have you got the map still? If you would, show us on the map where that road is?

A. During the commissioner's meeting and discussion, the Farr Cemetery Road –

[Defense counsel]: Objection, Your Honor. He was just asked to show where the cemetery was at.

[Court]: Let me let – let me let – this might be the earliest, this thing here I think will show up.

Q. All right. If you would, show us where the road is, the Farr Cemetery Road that was discussed in the commissioner's meeting?

A. Okay. It – it's right here where this X is, where the – where the cemetery is and there's a road comes down and you eventually come on out and hit 1012 down here. I believe this is right in front of Pine Grove Church. There's two or three different ways once you get off in the main woods there, you come in, get to it. And this, to our knowledge, is what some of the sen – some of the citizens in the county is calling the – want to call the Farr Cemetery.

Q. Okay. Does [sic] the minutes there, you read the minutes of the Commissioner's Court meeting, do they say anything about where the road ends?

A. Uh –

Q. Would you like – do you need to look at it to refresh your memory?

A. Yeah, see it – the Farr Cemetery Road stops at the Farr Cemetery.

Q. All right. And which – which direction is the road coming from to the Farr Cemetery?

A. That – it would be going – you'll be going from 1012, off of 1012 up this way and stops at the cemetery right here **[indicating]**.

Q. Okay. And once again show us where your house is located on the map.

A. And my house is up here next to County Road 1058.

Appellant testified that on December 30 he was traveling on an old road referred to as Farr Cemetery Road. This statement is uncontradicted. The evidence also shows that as of December 10, 2001, Farr Cemetery Road was administratively determined to be a public road. An article from the Newton County News dated July 23, 1998, about the restoration of Farr Cemetery was also introduced into evidence by the defense. The article provided in part:

> During a meeting of the Farrs Chapel Cemetery Association in 1996, Ben Lindsey offered to restore this cemetery and make it *accessible to the public*.
>
> * * *
>
> 'I began exploring ways to access the cemetery and remembered an old road that passed by Thomas Gill's house that led to the cemetery,' Lindsey reported.
>
> Gill and Lowe contacted the three property owners . . . and permission was given to build a one-lane road to the cemetery.

(Emphasis added). The evidence established that on December 10, 2001, Farr Cemetery Road was declared to be a public road and that on December 30, 2001, appellant was traveling on Farr Cemetery Road. The State failed to prove beyond a reasonable doubt that on December 30, 2001, Gill had a greater right of possession to Farr Cemetery Road

6

than appellant.  Viewing the evidence under *Jackson*, we conclude it is legally insufficient to support appellant's conviction for criminal trespass.  Our disposition of issue two pretermits consideration of issues one and three.

Accordingly, the judgment of the trial court is reversed and a judgment of acquittal is hereby rendered.

Don H. Reavis
Justice

Do not publish.