Opinion issued November 20, 2003



     












In The
Court of Appeals
For The
First District of Texas




NOS. 01-02-00693-CR
          01-02-00694-CR
          01-02-00695-CR




ORLANDO ORLY FILOTEO, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 56th District Court
Galveston County, Texas
Trial Court Cause Nos. 01CR1482, 01CR1483, and 01CR1484




MEMORANDUM OPINION

          A jury convicted appellant, Orlando Orly Filoteo, of three counts of aggravated
robbery. Punishment was assessed by the trial court at confinement for 25 years for
each conviction, to run concurrently. On appeal, appellant contends (1) the trial court
erred in failing to instruct the jury on circumstantial evidence; (2) the trial court erred
in failing to instruct the jury that acquittal was required if appellant’s weapon was
incapable of being fired; (3) the trial court erred in admitting, during the punishment
phase of the trial, a lab report from a prior arrest indicating appellant was in
possession of cocaine; and (4) appellant was denied effective assistance of counsel.
          We affirm.
FACTS AND PROCEDURAL HISTORY
          In the early-morning hours of August 9, 2001, appellant and Jason Merit
entered Curly’s Country Club, a neighborhood bar, and robbed Christle Rose Biernan,
John Marcini, and Nancy Louise Rhodes, complainants. All three complainants
testified at trial that appellant was armed with a large caliber firearm, resembling a
shotgun, wrapped in a towel. Ms. Rhodes and Mr. Marcini also testified that
appellant carried a pistol in his pants. 
          Appellant testified during trial and admitted to committing the robberies. 
However, appellant asserted that he did not carry a pistol during the robberies. 
Appellant also claimed that the object wrapped in the towel was not a firearm, but
rather a paint-ball gun. Further, appellant claimed that the paint-ball gun was neither
loaded with paint balls nor equipped with a Co2 cylinder required for firing the gun.
          During appellant’s testimony, trial counsel introduced into evidence a paint-ball gun identical to that used in the robberies. On cross-examination, the State asked
appellant to read a warning etched onto the paint-ball gun. Appellant read the
warning as follows:
“Warning, this is not a toy. Misuse may cause serious injury or death. 
Wear eye protection designed for the paint ball.” We must have—“Paint
ball use must be worn by the user or any person within range. Read
operation manual before using. Brass Eagle Rogers.”

After closing arguments, the jury deliberated for four hours before returning a verdict
of guilty on all three aggravated robbery charges. 
          During appellant’s punishment hearing, the State introduced testimony by
Officer Charles Pistone, Jr. to the effect that Officer Pistone had arrested appellant
on April 4, 2001, for possession of cocaine. The State also introduced a lab report
indicating that the substance Officer Pistone had found on appellant was cocaine. 
The trial court admitted the lab report over appellant’s objection that it was the fruit 
of an illegal search and seizure. After hearing the evidence presented at the
punishment hearing, the trial court rendered judgment and imposed sentence on June
20, 2002.
          On July 19, 2002, appellant filed a motion for new trial and on August 12,
2002, a hearing was held on the motion. After hearing testimony from appellant’s
trial counsel and appellant himself, the trial court denied the motion for new trial.

 
JURY INSTRUCTIONS
          In his third point of error, appellant contends the trial court erred in failing “to
charge the jury on circumstantial evidence as it related to whether the paint ball gun
Appellant used or exhibited was loaded after the evidence fairly raised the issue.” 
Relatedly, in his fourth point of error, appellant contends that the trial court erred in
failing to instruct the jury that it should acquit appellant if it found the paint-ball gun
was incapable of being fired.
A.      Instruction on Circumstantial Evidence
          In his third point of error, appellant asserts that “a jury charge on circumstantial
evidence should have been given because the State, as the trial court recognized, had
no direct evidence that the paint ball gun was loaded or even capable of being fired.”
          Two decades ago, the Court of Criminal Appeals held that a jury instruction on
circumstantial evidence was improper. Hankins v. State, 646 S.W.2d 191, 197 (Tex.
Crim. App. 1983). Eight years after Hankins, the Court discarded the reasonable
hypothesis of guilt analytical construct all together. See Geesa v. State, 820 S.W.2d
154, 161-162 (Tex. Crim. App. 1991) (stating that reasonable hypothesis of guilt
analytical construct was inappropriate both as jury instruction and as standard of
review). In Geesa, however, the court opined that abrogation of the reasonable
hypothesis of guilt analytical construct necessitated the requirement of a full
definitional instruction to the jury on reasonable doubt. Id. at 161. The requirement
enunciated in Geesa was soon found to be untenable, and nine years later, the court
overruled that portion of Geesa which required trial courts to instruct juries on the
definition of “beyond a reasonable doubt.” Paulson v. State, 28 S.W.3d 570, 573
(Tex. Crim. App. 2000). Appellant invites this court to interpret Paulson as
providing for a return to the status quo ante (i.e., the pre-Hankins circumstantial
evidence jury charge requirement). We decline this invitation.
          The Paulson court specifically limited its decision to that portion of Geesa
which required trial courts to instruct juries on the definition of “beyond a reasonable
doubt.” See id. at 573. No mention was made by the court of the Hankins decision
or to that portion of Geesa providing for the abrogation of the reasonable hypothesis
of guilt analytical construct. To find that a repudiation of the “beyond a reasonable
doubt” instruction necessarily means a return to jury instructions on circumstantial
evidence would be to follow the same logic criticized by the court in Paulson. See
id. at 572. We conclude that a jury instruction on circumstantial evidence is
improper. Therefore, we hold that the trial court committed no error in failing to give
such an instruction in the instant case.
          Appellant’s third point of error is overruled.
B.      Instruction on Acquittal
          In his fourth point of error, appellant asserts that the evidence fairly raised the
issue of whether the paint-ball gun was capable of being fired. Appellant further
contends that the paint-ball gun did not constitute a deadly weapon if it was not in or
of such a condition that it could be fired.


 Therefore, appellant concludes that the
trial court erred in failing to give a jury instruction as to whether the paint-ball gun
was capable of being fired.
          A criminal defendant is entitled to a jury instruction on any defensive issue
raised by the evidence, whether that evidence is weak or strong, unimpeached or
contradicted, and regardless of what the trial court may or may not think about the
credibility of the evidence. See Granger v. State, 3 S.W.3d 36, 38 (Tex. Crim. App.
1999). However, the term “defense” should not be used for an issue that has not been
specifically labeled as such by the Texas Legislature. Giesberg v. State, 984 S.W.2d
245, 250 (Tex. Crim. App. 1998). A defendant is not entitled to an instruction on a
defensive issue if the issue goes no further than to merely negate an element of the
offense alleged by the State in its indictment. See id. at 250. Therefore, a defense
which is not recognized by the legislature as either a “defense” or as an “affirmative
defense” does not warrant a separate instruction. Id. 
          The issue of whether the paint ball gun could have been fired does nothing
more than tend to negate an element of the offense of aggravated robbery (i.e., that
appellant used a deadly weapon in the commission of the robbery). It does not raise
an issue recognized by the legislature as a defense or affirmative defense, see Tex.
Penal Code Ann. § 29.03 (Vernon 2003), and therefore does not warrant a jury
instruction. Indeed, since the issue was adequately accounted for in the general jury
charge on aggravated robbery, a special instruction for the issue would have been an
improper comment on the evidence. Giesberg, 984 S.W.2d at 250. We hold that the
trial court did not err in failing to instruct the jury that appellant was entitled to an
acquittal if the jury found the paint-ball gun incapable of being fired.
          Appellant’s fourth point of error is overruled.
ADMISSION OF COCAINE
          In his fifth point of error, appellant asserts that the trial court erred in admitting
the lab report indicating that the substance Officer Pistone found on him was cocaine. 
Appellant contends that the lab report was inadmissible because it was the fruit of an 
illegal search. Specifically, appellant contends that Officer Pistone lacked the
authority to conduct the pat-down search in which the cocaine was discovered
because appellant’s actions did not warrant the search.
          Before a police officer may subject a person to a pat-down search, the officer 
must be able to “point to specific and articulable facts, which, taken together with
rational inferences from those facts, reasonably warrant the intrusion.” Terry v. Ohio,
392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); O’Hara v. State, 27 S.W.3d 548, 551
(Tex. Crim. App. 2000). We consider the officer’s action in light of the facts and
circumstances confronting the officer at the time, and not on the officer’s actual state
of mind at the time the challenged action occurred. O’Hara, 27 S.W.3d at 551. The
officer need not be absolutely certain that the individual is armed. Id. The issue is
not whether the officer was “scared” by the threat of danger, but rather whether a
reasonably prudent person would justifiably believe that his safety or that of others
was in danger. Id.
          During the punishment hearing, Officer Pistone testified that, while patrolling
for car burglars, he noticed appellant peering into a parked car at around 2:00 a.m. on
the morning of April 4, 2001. Officer Pistone also testified that the following
occurred when he approached appellant:
A.After I asked him questions and found out it wasn’t his vehicle,
friend’s vehicle, with his jittery movements I went ahead and pat 
searched him down for weapons. Seemed out of the ordinary for
me. I pat searched him down for weapons and I felt an object in
his pocket.
 
Q.You say jittery, jerky movements. Stand up show me what you
mean.
 
A.At first, when I told him to pat search him, just as an example,
told him to put his hands on the vehicle I was going to pat search
him, and he jumps off the car and turned around toward me. 
Jittery movement is unannounced movement, not normal,
unexpected to me.
 
Q.So, you decided to conduct a pat down search?
 
A.Yes.
 
Q.Why did you do that?
 
A.Just from the nervousness from him. I felt uneasy talking to him
or anything.

          During the pat down search, appellant acknowledged that he was carrying a
knife. Officer Pistone, therefore, searched appellant’s pockets. In one of appellant’s
pockets, Officer Pistone found a bag filled with what was later determined to be
cocaine. 
          We conclude that appellant’s conduct was such that a reasonable person in
Officer Pistone’s position would have been justified in fearing for his safety. We
further conclude that once appellant acknowledged that he was carrying a knife,
Officer Pistone was entitled to conduct a search of appellant’s pockets to find the
knife and any other weapons. 
          Because the lab report was not obtained in violation of the Fourth Amendment,
we hold that the trial court did not err in admitting the report over appellant’s
objection.
          Appellant’s fifth point of error is overruled.
INEFFECTIVE ASSISTANCE OF COUNSEL
          In his first two points of error, appellant contends that his trial counsel was
ineffective under the United States Constitution and the Texas Constitution, and that
the court abused its discretion by denying the motion for new trial based on
ineffective assistance of counsel.
A.      Standard of Review
          We review the denial of a motion for new trial under an abuse of discretion
standard. Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995); Laidley v. State,
966 S.W.2d 105, 107 (Tex. App.—Houston [1st Dist.] 1998, pet. ref’d).
          Under both the United States Constitution and the Texas Constitution, an
appellant claiming ineffective assistance of counsel must show that (1) counsel’s
performance was so deficient that he was not functioning as acceptable counsel under
the sixth amendment, and (2) but for counsel’s error, the result of the proceedings
would have been different. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 
2052, 2064 (1984); Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999);
Gamble v. State, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.).
          It is the defendant’s burden to prove ineffective assistance of counsel. 
Strickland, 466 U.S. at 687, 104 S. Ct. at 2064; Gamble, 916 S.W.2d at 93. A
defendant must overcome the presumption that, under the circumstances, the
challenged action might be considered sound trial strategy. Strickland, 466 U.S. at
689, 104 S. Ct. At 2064; Gamble, 916 S.W.2d at 93. Trial counsel is not ineffective
simply because the trial strategy implemented did not produce the desired result. 
Delrio v. State, 840 S.W.2d 443, 447 (Tex. Crim. App. 1992).
B.      The Paint-Ball Gun 
          Appellant contends that trial counsel was ineffective because he (1) failed to
discover that the paint-ball gun he introduced into evidence had a warning to the
effect that misuse of the gun could cause serious injury or death, (2) refused to
“seriously consider” introducing a picture of the replica gun in lieu of the actual
replica, and (3) failed to advance his defensive theory without introducing a replica
paint-ball gun. Appellant further claims that the introduction of the paint-ball gun
with the complained-of warning filled in the gaps of the State’s case and effectively
sabotaged appellant’s defensive theory.
          During the motion for new trial hearing, appellant’s trial counsel testified he
considered the evidence that appellant committed the robberies in question to be
overwhelming; however, trial counsel hoped to receive a jury instruction on the
reduced offense of robbery. Therefore, trial counsel presented the trial theory that,
although appellant committed the robberies, appellant did not use a deadly weapon
in the commission of the robberies. Trial counsel’s trial strategy was to convince the
jury that appellant used only a partially dismantled paint-ball gun during the robberies
and not a shotgun and pistol as the State argued. 
          Trial counsel testified to the importance of introducing a replica paint-ball gun
as follows:
 
Well, I thought it was important because the witnesses had
testified—none of the witnesses obviously besides Mr. Filoteo testified
that it was a paint ball gun.


 
They all described the weapon, and I know at least one or two of
them said it looked like a shotgun. Someone else may have said it
looked like either a shotgun or a large caliber weapon.
 
And I thought it was important to show that with a towel draped
over a portion of it, that it could be—the paint ball gun could easily be
mistaken for a shotgun or a large caliber weapon.
 
That’s why I thought it was important because I thought that was
the beginning of trying to convince the jury that it was something other
than a gun, a firearm.
Concerning the possibility that the State might introduce evidence that a paint-ball
gun was a deadly weapon, trial counsel testified as follows:
There was never any question in my mind and I didn’t think there was
ever going to be a question in the jury’s mind that a loaded paint ball
gun with the Co2 cylinder on it was a deadly weapon.
 
I never thought that that was a serious consideration. Our case
was going to rise or fall on whether or not the jurors believed Mr.
Filoteo when he said that it was not loaded and it didn’t have the Co2
cylinder on it so that it was incapable of being fired.

          Trial counsel’s defense strategy depended on convincing the jury that the
object appellant held wrapped in a towel was a disassembled paint-ball gun and not
a shotgun. To do this, trial counsel determined that it was necessary to introduce a
replica paint-ball gun and exhibit how it might be mistaken for a shot-gun when
wrapped in a towel. Trial counsel was cognizant of the warnings associated with
paint-ball guns and decided to introduce the gun, despite the risk that the State would 
 
 
exploit the warnings. Trial counsel’s decision to introduce the replica paint-ball gun
is indicative of the difficult choices trial attorneys face which require them to balance
potential risks and benefits.
          It is not our job to second guess these strategic decisions with the benefit of
hindsight. Strickland, 466 U.S. at 689, 104 S.Ct. 2052; Wilkerson v. State, 726
S.W.2d 542, 548 (Tex. Crim. App.1986). We must presume “that counsel is better
positioned than the appellate court to judge the pragmatism of the particular case, and
that counsel made all significant decisions in the exercise of reasonable professional
judgment.” Young v. State, 991 S.W.2d 835, 837 (Tex. Crim. App. 1999). We
further presume that counsel’s conduct lies within the “wide range of reasonable
representation” and constitutes sound trial strategy. McFarland v. State, 928 S.W.2d
482, 500 (Tex. Crim. App. 1996). 
          We hold that trial counsel’s decision to introduce the paint-ball gun into
evidence did not render counsel’s performance so deficient that he was not
functioning as acceptable counsel under the United States and Texas Constitutions.
C.      Jury Instructions
          Appellant contends that trial counsel was ineffective because he (1) failed to
request a jury instruction on circumstantial evidence, and (2) failed to request a jury
instruction charging the jury to acquit appellant if the jury found that the paint-ball
gun was not capable of being fired.
          A defense attorney’s failure to request a jury instruction can render his
assistance ineffective if, under the particular facts of the case, the trial judge would
have erred in refusing the instruction had counsel requested it. Wood v. State, 4
S.W.3d 85, 87 (Tex. App.—Fort Worth 1999) (citing Vasquez v. State, 830 S.W.2d
948, 951 (Tex. Crim. App. 1992)). However, as discussed above, it would have been
inappropriate for the trial court to have given the jury instructions appellant now
contends were necessary. We hold that trial counsel’s failure to request inappropriate
jury instructions does not constitute ineffective assistance of counsel.
          Appellant’s first and second points of error are overruled.
CONCLUSION
          Having overruled all appellant’s points of error, we affirm the judgment of the
trial court.
 

                                                        Laura Carter Higley
                                                        Justice
 
Panel consists of Justices Hedges, Nuchia, and Higley.
Do not publish. Tex. R. App. P. 47.2(b).