Criminal Case Template







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



HUMBERTO CONCHA,

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§

§

§

§

§

No. 08-03-00485-CR

Appeal from the

41st District Court 

of El Paso County, Texas

(TC#20020D06531)




MEMORANDUM OPINION
           Humberto Concha was convicted by a jury of driving while intoxicated--third or
more. The trial court sentenced him to ten years in prison, but suspended the sentence
and placed him on community supervision for ten years. On appeal, he challenges the
legal and factual sufficiency of the evidence to establish that he operated a motor vehicle
or that he was intoxicated while doing so. We affirm.
Standards of Review
           In reviewing the legal sufficiency of the evidence, we must consider all the
evidence in the light most favorable to the verdict to determine whether a rational jury
could have found the essential elements of the offense beyond a reasonable doubt. 
Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979);
Wallace v. State, 52 S.W.3d 231, 234 (Tex. App.--El Paso 2001, no pet.). The jury, not
the reviewing court, has the power to weigh the evidence and to resolve conflicts in the
evidence. Wallace, 52 S.W.3d at 234.
           Years ago, the “reasonable-hypothesis-of-innocence analytical construct” was
applied to determine legal sufficiency in circumstantial evidence cases. See Geesa v.
State, 820 S.W.2d 154, 155 (Tex. Crim. App. 1991), overruled in part by Paulson v.
State, 28 S.W.3d 570 (Tex. Crim. App. 2000). Under this construct, the evidence would
be legally insufficient unless all reasonable hypotheses other than the defendant’s guilt
were negated. See id. at 158. In Geesa, the Court of Criminal Appeals abrogated this
construct. See id. at 161.
           In reviewing the factual sufficiency of the evidence, we must consider all the
evidence in a neutral light to determine whether the jury was rationally justified in finding
guilt beyond a reasonable doubt. Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App.
2004). The Court of Criminal Appeals recently explained that there are two ways in
which the evidence may be factually insufficient. First, when considered by itself,
evidence supporting the verdict may be too weak to support the finding of guilt beyond a
reasonable doubt. Second, there may be evidence contrary to the verdict that is so strong
that the beyond-a-reasonable-doubt standard could not have been met. Id. at 484-85. 
           Alternative reasonable hypotheses are relevant, but not determinative, in a factual
sufficiency review. Wilson v. State, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999). The
jury, but not the reviewing court, may accept or reject reasonably equal competing
theories. Zuniga, 144 S.W.3d at 483; Goodman v. State, 66 S.W.3d 283, 287 (Tex. Crim.
App. 2001). Deference is given to the jury’s verdict and to its credibility determinations. 
Zuniga, 144 S.W.3d at 481.
The Evidence
           El Paso Deputy Sheriff Mark David Graham testified that sometime after midnight
he was dispatched to a motor vehicle accident near mile marker five on Interstate 10 East. 
 When he arrived at the scene, he saw a tractor-trailer parked in the rest area and a car that
had collided into the rear of the trailer. He found Concha sitting behind the wheel of the
car. Concha was alone in the car, there were no other cars in the vicinity, and Graham did
not find any witnesses to the accident. When asked whether the lighting in the area was
poor or good, Graham answered, “It’s I-10 east. There’s light.”
           Due to the accident, Concha was “semi-pinned” inside the car. Graham believed
that the damage to the car was moderate to heavy and that Concha was “pretty lucky that
he didn’t actually hurt himself pretty bad.” Graham testified that he “detected a strong
odor of alcohol coming from [Concha’s] breath. He had slurred speech and all the
mannerisms of someone that is intoxicated.” Furthermore, “he had no idea even where he
was at.” In Graham’s opinion, Concha’s confusion resulted from his intoxication, not
from the accident. After Graham helped him get out of the car, Concha was unable to
maintain his balance. Graham was concerned that Concha might need medical attention,
but he did not see any physical injuries.
           Concha did not admit to Graham that he had been driving the car and would not
tell him what he had been drinking. Graham did not have any idea how long Concha’s
car had been at that location. The prosecutor asked whether, based on his experience with
accidents, it seemed to Graham that Concha had “power or influence over the vehicle
when the accident occurred.” Graham responded, “I would say he was in possession of
the vehicle, yes, sir.” On cross-examination, he acknowledged that he could not say for
sure whether Concha had been driving or whether there had been passengers in the car.
           El Paso Deputy Sheriff Jesus Rodriguez testified that he assisted Deputy Graham
at the accident scene. He responded to the dispatch within approximately six minutes,
arriving at the scene at approximately 3 a.m. Rodriguez described the accident scene as a
rest area for trucks. The tractor-trailer was parked off of the right side of the road and
was not in a traffic lane. The car hit at “[p]retty much dead center” of the rear of the
trailer. The front part of the car was under the trailer up to about half of the length of the
car’s hood. Rodriguez saw Concha, whom he described as the “driver,” sitting behind the
steering wheel with his feet under the steering wheel. He did not see anyone else in the
car. Rodriguez also did not see anyone else in the area except for the driver of the tractor-trailer, who had been asleep in the cab of the truck when he felt the impact of Concha’s
car.
           The officers asked Concha if he was injured, and Concha responded that he was
not. Rodriguez believed that Concha was “very intoxicated” because “he reeked of
alcohol,” had very bloodshot eyes, very slurred speech, and very poor balance. In fact,
Concha’s balance was so poor that Rodriguez had to hold him up. Rodriguez attributed
all these characteristics to Concha’s intoxication, rather than to the accident. On cross-examination, however, Rodriguez admitted that he could not determine a level of
intoxication simply from the smell of alcohol or from a person’s balance.
           Rodriguez testified that Concha thought he was getting off at the Fabens exit. 
“[H]e made a statement that he was going to Fabens or that he was getting off at the
Fabens exit. . . . So it was apparent that he wasn’t aware where he was . . . .” 
           On cross-examination, Rodriguez admitted that neither he nor Graham made a
report about the accident, he did not have any notes about it, and he was testifying from
memory, even though the accident occurred approximately a year before the trial. In the
intervening period, Rodriguez believed he had worked on three additional DWI cases.
           El Paso Police Officer Alberto Aguirre testified that when he arrived at the
accident scene, between 3:05 and 3:30 a.m., the deputies were there and Concha was
already out of the car. When he approached Concha, he noticed a strong odor of alcohol
on his breath and person. He also noticed that Concha had a red nose, face, and eyes and
was swaying back and forth. Aguirre testified that the redness on Concha’s face might
have been caused by the accident. He asked Concha if he needed medical attention, and
Concha replied that he did not. Aguirre also asked Concha if he had been drinking. He
testified, “If I’m correct, he stated, yes, he did.”
           Aguirre testified that he spoke to the driver of the tractor-trailer at the scene, but he
did not know his whereabouts at the time of trial. He had no photos or videotape from the
accident scene or of the field sobriety tests. He did not look for brake or yaw marks.
           Aguirre asked Concha if he would be able to perform some field sobriety tests and
Concha stated that he could. Aguirre then attempted to conduct three field sobriety tests
with Concha. Aguirre testified that he had been a police officer for over twenty-five
months and had conducted field sobriety tests three or four times. He admitted that he
could not determine a blood alcohol level from the field sobriety tests.
           The first test Aguirre conducted was the horizontal gaze nystagmus (HGN) test. 
In Aguirre’s opinion, the results of this test indicated that Concha was intoxicated. He
was not aware of any injuries that Concha could have sustained in the accident that would
have yielded a false positive on the HGN test. On cross-examination, Aguirre testified
that the accused’s head should be perfectly still when doing the HGN test. Although he
instructed Concha to stop swaying back and forth during the test, Concha’s head was not
perfectly still. Nevertheless, he did not think that affected the result of the HGN test. 
Intoxicated people have a tendency to move their head while doing the test, although they
are instructed only to move their eyes.
           Aguirre testified that although it was dark outside, the lights from his patrol car
provided sufficient light to conduct the HGN test. The patrol car was parked at least five
car lengths behind Concha’s car, and the test was conducted right behind Concha’s car,
with Concha’s eyes facing the patrol car. Aguirre had the back portion of his overhead
strobe lights on, but he could not recall whether the front portion was on. In his training,
Aguirre had learned that the strobe lights could affect the results of the test, but he did not
believe it affected the results in this case.
           The next test Aguirre conducted was the walk-and-turn. Concha found it difficult
to follow the instructions for that test. For example, he started before he was instructed to
do so and he used his arms for balance. Concha also stepped out of line once or twice,
but Aguirre could not specifically remember which steps he missed. Aguirre concluded
that Concha failed the walk-and-turn test, and the test indicated that he was intoxicated.
           The last test Aguirre conducted was the one-legged stand. Concha was unable to
perform this test because he was swaying badly. Aguirre stopped the test because Concha
was about to fall. This indicated that Concha was intoxicated.
           After conducting the three tests, Aguirre arrested Concha and took him to the
police station for a breath test. Aguirre did not conduct the breath test, but he watched as
another officer conducted it. He testified that Concha was “somewhat . . . cooperative,”
but it seemed that he did not want to perform the test.
           El Paso Police Officer Kimmett Bellows testified that he conducted the intoxilyzer
exam on Concha. When he first met Concha, at 4:50 a.m., he noticed that he had a strong
odor of alcohol, glassy and bloodshot eyes, slurred speech, and somewhat unstable
balance. When Concha was directed to place his mouth on the mouthpiece of the
intoxilyzer, he misjudged the distance and hit his mouth on the machine. Based on all of
this, Bellows believed that Concha was intoxicated.
           Bellows instructed Concha to blow into the intoxilyzer for eight-to-ten seconds. 
He believed that Concha understood this instruction. Initially, Concha puffed his cheeks
out as if he were blowing without actually blowing any air. Bellows knew this was
happening because the intoxilyzer registers whether it has air in it and also because it is
designed so that one can hear air blowing through it. Bellows told Concha to stop
“playing games” and that if he persisted, Bellows would record that he had refused to take
the test. At that point, Concha began “puffing” into the tube, never blowing any longer
than three or four seconds. These three-to-four second puffs did not provide sufficient
breath samples. Therefore, Bellows recorded Concha’s performance as a refusal to take
the test.
           On cross-examination, Bellows admitted that when someone provides a deficient
sample, the intoxilyzer produces a slip of paper stating “deficient sample.” But Bellows
did not bring any of those slips of paper, nor did he bring any forms showing whether
Concha consented or refused to take the test. He testified that he was not asked to bring
anything to the trial. Bellows also testified that in his opinion the intoxilyzer was
working properly. But he admitted that he is not a technician and that someone who
knows how to repair the machine would know better than he whether it was working
properly.
Discussion
           The indictment charged that Concha “while operating a motor vehicle in a public
place, was intoxicated to-wit: by not having the normal use of mental and physical
faculties by reason of the introduction of alcohol into the body . . . .” Concha argues that
the evidence is legally and factually insufficient to establish that he operated the car or
that he was intoxicated while operating the car.
           Concha points out that there is no evidence regarding when the accident occurred. 
Although Rodriguez and Aguirre testified that they arrived at the scene between 3 and
3:30 and Rodriguez testified that he arrived within six minutes of the dispatch, neither of
these officers stated when the accident occurred. No witnesses to the accident testified,
and Graham admitted that he did not know how long Concha’s car had been at the scene. 
Moreover, there was no evidence that the car’s engine was running, that its lights were
on, that it was in driving gear, or that Concha’s foot was on the gas pedal or brake. 
Concha also notes that there was no evidence regarding how much alcohol he consumed
or when he had his last drink, nor was there any retrograde extrapolation evidence. 
Concha suggests that without all of this evidence, the State cannot establish that he
operated the car or that he was intoxicated while operating the car. We disagree. 
           Concha relies primarily on cases decided before Geesa. See, e.g., McCafferty v.
State, 748 S.W.2d 489 (Tex. App.--Houston [1st Dist.] 1988, no pet.); Reddie v. State,
736 S.W.2d 923 (Tex. App.--San Antonio 1987, pet. ref’d). In these cases, courts
required the State to negate the possibility that the defendant did not operate the vehicle
or became intoxicated after operating the vehicle. See McCafferty, 748 S.W.2d at 490-91;
Reddie, 736 S.W.2d at 925-26. As other courts have noted, these cases have little, if any,
precedential value now that the “reasonable-hypothesis-of-innocence analytical construct”
has been abrogated. See, e.g., Zavala v. State, 89 S.W.3d 134, 138-39 (Tex. App.--Corpus Christi 2002, no pet.); Purvis v. State, 4 S.W.3d 118, 120 & n.1 (Tex. App.--Waco 1999, no pet.); Barton v. State, 882 S.W.2d 456, 458-59 (Tex. App.--Dallas 1994,
no pet.). As explained above, the current standards of review do not require the State to
negate alternative hypotheses. Now, “[p]roof of the precise time of an accident or of
driving is not the sine qua non of driving while intoxicated.” Zavala, 89 S.W.3d at 139. 
There must only be proof from which the jury can find that the defendant was intoxicated
at the time of driving, whenever that may have been. Id. In other words, there must be a
link between the driving and the intoxication. Id.
           As to whether Concha operated the car, the State presented the following evidence. 
Rodriguez testified that the driver of the tractor-trailer was asleep in his cab when he felt
the impact of a car hitting the trailer. This tends to negate the possibility that the tractor-trailer could have backed into Concha’s parked car, while supporting the theory that
Concha’s car was driven into the tractor-trailer. Graham and Rodriguez found Concha
behind the wheel of the car. Although Graham could not remember whether Concha’s
feet were on the floorboard, Rodriguez recalled that Concha’s feet were under the
steering wheel. There was no one else in the car and no other person in the area who
could have been the driver. Moreover, Graham stated that Concha was “semi-pinned” in
place such that it was difficult to extricate him. This suggests that Concha was in the
driver’s seat at the time of the collision. Finally, Rodriguez testified that Concha stated
he “was getting off at the Fabens exit,” thus suggesting that he was driving at the time of
the collision.
           As to whether Concha was intoxicated while driving, all four of the officers 
testified that they believed Concha was intoxicated when they observed him after the
collision. They also testified to the facts--odor of alcohol, slurred speech, lack of
coordination and balance, bloodshot eyes, failure of sobriety tests--that led them to this
belief. Furthermore, Bellows testified that Concha effectively refused the breath test. 
This testimony is sufficient to establish that Concha was intoxicated some time after the
collision. See Valles v. State, 817 S.W.2d 138, 141 (Tex. App.--El Paso 1991, no pet.)
(“The testimony of a peace officer, standing alone, is sufficient to support a conviction
for driving while intoxicated.”); Finley v. State, 809 S.W.2d 909, 913 (Tex. App.--Houston [14th Dist.] 1991, pet. ref’d) (holding that the defendant’s failure to submit to a
breath test may be considered as evidence of guilt).
           The State also presented the following evidence. The tractor-trailer was
completely off of the road and Concha’s car hit the center of the rear of the trailer with
such force that approximately half of the car’s hood went under the trailer. There is no
evidence that the driving conditions were poor. Therefore, the fact that Concha hit a
vehicle that was parked off of the road with great force suggests that he was suffering
some type of mental or physical impairment. Rodriguez’s testimony indicates that
Concha meant to take the Fabens exit when in fact he pulled into a rest area for trucks. 
This too suggests that Concha was mentally impaired. From this evidence of Concha’s
impairment, considered along with the evidence that he was intoxicated after the
collision, the jury could have inferred that Concha was intoxicated at the time of the
collision.
           Viewing all the evidence in the light most favorable to the verdict, the jury could
have rationally found that Concha was intoxicated while driving. Even when viewed in a
neutral light and considering the deficiencies in the State’s proof--e.g., lack of direct
evidence or supporting documentary evidence--the evidence is not too weak to support
the finding beyond a reasonable doubt. Concha has not pointed to any contrary evidence
that would suggest that he was not driving or that he became intoxicated after the
collision. For example, there is no evidence that any alcohol was found in the car or the
surrounding area. In any event, the jury had the prerogative to reject the alternative
hypotheses that Concha was not driving, became intoxicated after the accident, or only
appeared to be intoxicated but was actually injured in the accident. We therefore
conclude that the evidence is both legally and factually sufficient to establish that Concha
was intoxicated while he operated the car.



Conclusion
           For the reasons stated herein, we overrule Concha’s issues on appeal and affirm
the judgment of the trial court.
 
                                                                  SUSAN LARSEN, Justice
December 16, 2004

Before Panel No. 1
Larsen, McClure, and Chew, JJ.

(Do Not Publish)