**In re COMMITMENT OF Seth HILL.**

**No. 09–08–00482–CV.**

Court of Appeals of Texas,
Beaumont.

Submitted Aug. 19, 2009.

Decided March 25, 2010.

Ann Landeros, George W. Lang, II, State counsels for Offenders, Huntsville, for appellant.

Melinda Fletcher, Special Prosecution Unit, Amarillo, for appellee.

Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

A jury determined that Seth Hill is a sexually violent predator under Texas law. *See* Tex. Health & Safety Code Ann. §§ 841.001–.147 (Vernon 2003 & Supp. 2009). The jury found that Hill suffers from a behavioral abnormality that predisposes him to engage in a predatory act of sexual violence. Hill presents seven issues in his appeal from the trial court's judgment and order of civil commitment. We affirm the judgment.

### Voir Dire

In issues one through five, Hill complains of errors that he contends occurred during jury selection. In issue one, Hill argues that during voir dire, the trial court impermissibly restricted his opportunity to question the jury. Issue two asserts that while the jury was being selected, the trial court incorrectly defined the terms "reasonable doubt" and "behavioral abnormality." Issue three contends that the trial court commented improperly on the evidence when it referenced Hill's prior criminal conviction and when it mentioned the community's bias against homosexuals.

Issue four asserts the trial court erred by refusing to grant Hill's motion for mistrial. Issue five contends the trial court erred when it denied Hill's request for additional jury strikes.

The State contends that Hill failed to preserve his right to appellate review of the errors that he asserts occurred during voir dire. Hill contends that he perfected his complaints for purposes of appellate review.

■ Generally, to preserve complaints that arise during voir dire for review on appeal, Texas law requires parties to object when allegedly improper comments occur, and to then request an instruction aimed at curing any harm that may have occurred due to the comment, unless a proper instruction cannot render the comment harmless. *See Dow Chemical Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001); *see also In re Commitment of Barbee*, 192 S.W.3d 835, 847 (Tex.App.-Beaumont 2006, no pet.). When the trial court has determined that a question is confusing or that the question is improperly phrased, the questioner should propose a different question or articulate a specific line of inquiry that he wishes to pursue. *Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743, 758 (Tex.2006). "Absent the questioner's proposing a different question, or being foreclosed completely by the trial court from posing a different question on the same topic, nothing is preserved for appellate review." *Barbee*, 192 S.W.3d at 846–47.

### Issue One

■ Hill contends that he was denied his right to a fair and impartial trial because the trial court prevented him from "determining whether grounds to strike prospective jurors existed or from intelligently exercising peremptory challenges."

Specifically, Hill complains about the court's ruling after his attorney posed the following question:

> [HILL'S ATTORNEY]: The second element is whether or not a Respondent has a behavioral abnormality that would cause that person to be likely to commit sexual acts, sexual violence and predatory acts. That's the second prong of the [statutory] text. And once you hear the first element of the statute, that a Respondent has two previous sex crimes, is that going to be it for you, that the State will not even have to get to the second prong of the test?

When the State objected on the grounds that the question was a "commitment question," the court ruled, "It is a commitment question the way you are asking it. I'll sustain the State's objection." At that point, Hill's attorney asked: "Would the state have to prove the second element, if you just heard—[.]" At that point, the trial court interjected: "Sir, that's the same question. I sustained the State's objection. You need to ask the question in a noncommitment fashion, if you are going to ask it." Hill's attorney responded: "Okay," and then did not attempt to further rephrase the question.

██ While areas of inquiry such as whether the jury can follow the trial court's instructions may be proper, a particular question may not be proper because it seeks to test the weight that jurors would place on facts that will later be introduced into evidence. *See Vasquez,* 189 S.W.3d at 758. We conclude the trial court properly exercised its discretion in disallowing Hill's two questions, as it was reasonable for the trial court to have interpreted Hill's questions as aiming to test the weight the jury would place on Hill's prior convictions. When the rephrased question did not resolve the problem posed by the original question, Hill's attorney then failed to articulate a specific line of inquiry. "The substance of a question, not its form, determines whether it probes for prejudices or previews a probable verdict." *Id.* at 757–58.

> [T]o preserve a complaint that a trial court improperly restricted voir dire, a party must timely alert the trial court as to the specific manner in which it intends to pursue the inquiry. Such a requirement provides the trial court with an opportunity to cure any error, obviating the need for later appellate review, and further allows an appellate court to examine the trial court's decision in context to determine whether error exists, and if so, whether harm resulted. *Id.* at 758.

Having neither cured the objectionable nature of the initial question, nor rephrased the question as requested, nor having identified a specific line of inquiry, Hill has not preserved his right to obtain a review of the trial court's decision to disallow the two questions that are in issue in this appeal.

██ In addition, Hill also argues that the trial court restricted his attorney from questioning the jury about "what they think reasonable doubt means." Hill's complaint must be placed in context. The record reflects that Hill's attorney stated that the law required the prosecutor to "prove their case beyond all reasonable doubt, which means one hundred percent concerning reasonable doubt...." At that point, the following occurred:

> [STATE'S ATTORNEY]: Your Honor, I believe he's misstating the law.
>
> [HILL'S ATTORNEY]: No, ma'am.
>
> THE COURT: Well, let me just tell the people of the jury, the burden is on the State of Texas. It does not shift from the State of Texas. Okay. The burden is beyond a reasonable doubt. The phrase 'beyond a reasonable doubt' is

sort of self-defining. Okay. And that's their burden. That's the law. So, if you have any questions about that, you can direct them towards me.

[HILL'S ATTORNEY]: Who has a[n] issue—who has a[n] issue, a problem with the fact the prosecutor has to prove their case beyond all reasonable doubt?

THE COURT: Again, it's beyond a reasonable doubt. The phrase "all" is not in there. Okay. So, I understand what she's getting confused by. The phrase is: Do you find beyond a reasonable doubt. The phrase is not defined beyond all reasonable doubt.

[STATE'S ATTORNEY]: Thank you, Your Honor.

[HILL'S ATTORNEY]: Case law states—

THE COURT: Let me tell you what the jury questionnaire states. This is the law and what we're going to use.

[HILL'S ATTORNEY]: I want to object to the Court's ruling that [Hill] cannot state or explain to the jury that the burden of proof is beyond all reasonable doubt.

THE COURT: That's fine. Because the burden of evidence is not the—the burden of proof is beyond a reasonable doubt, not beyond all reasonable doubt. The burden of proof as beyond a reasonable doubt implies [sic] to everything. It's got to be proven for every single element of the charge. But the phrase that's going to be used in the jury charge is beyond a reasonable doubt.

[HILL'S ATTORNEY]: I have case law, Your Honor.

THE COURT: I'm glad you do. And I've read a lot of case law on this, so you can proceed.

In summary, the record reflects that the trial court attempted to restrict Hill's attorney from questioning the jury using the phrase "beyond all reasonable doubt" because the charge the court intended to use employed the phrase "beyond a reasonable doubt" as the operative standard of proof. We also note that the charge later used by the court asked the jury: "Do you find beyond a reasonable doubt that Seth Hill suffers from a behavioral abnormality that predisposes him to engage in a predatory act of sexual violence."

 Generally, "voir dire examination is largely within the sound discretion of the trial judge and . . . broad latitude is allowed for examination." *Cortez v. HCCI—San Antonio, Inc.*, 159 S.W.3d 87, 92 (Tex.2005). However, "[c]ounsel's latitude in voir dire, while broad, is constrained by reasonable trial court control." *Vasquez*, 189 S.W.3d at 750.

Here, the trial court apparently desired to eliminate confusion that might have been created by Hill's effort to question the array about its understanding of "beyond all reasonable doubt." In our opinion, the trial court had the discretion to require Hill's attorney to phrase his questions in a manner consistent with the terms that it intended to use in a properly phrased charge. Here, Hill does not complain that the charge was not properly phrased, and the record does not show that the trial court refused to allow Hill's attorney to question the panel over its understanding of the phrase "beyond a reasonable doubt." We conclude that Hill's complaint about the trial court's refusal to allow his attorney to ask questions using the phrase "beyond all reasonable doubt" is without merit.

 Additionally, in issue one, Hill complains that the trial court restricted his examination of the venire regarding whether "they had biases or prejudices against homosexual persons or persons with criminal convictions." However, the

record reveals that Hill's attorney asked several questions about homosexuality to which no objections were lodged. Generally, Hill's counsel asked several questions regarding whether the potential jurors could give someone a fair trial if that person was homosexual. In response, two of the jurors indicated that they could not be fair, and two others indicated they were not sure if they could be fair. Yet another, juror six, stated that "Given the implied content, I would struggle very hard to." Juror twenty-nine further explained that if the homosexual acts involved a child, "I could not give that person a fair trial." Ultimately, Hill's attorney asked the panel: "Who else feels that you couldn't give someone a fair trial like number 29, if the issue—[.]" At that point, the trial court interrupted, and told Hill's trial attorney:

THE COURT: [T]he question is: Can they follow the law, not emotions. So, ask your questions based upon, can you give a person a fair trial if he has a behavioral abnormality based upon homosexuality. Ask that question. Don't just put the word "homosexuality" on it.

Instead of complying with the trial court's directive, however, Hill's counsel again phrased a question to the jury that asked them whether anyone "feels" like juror twenty-nine, at which point the court interrupted and said:

THE COURT: Nobody here is going to admit to liking homosexuals, . . . . Okay. That's not going to happen. That's why I'm not letting you ask the question. Move on. Ask a different question. Do not ask a question about how people feel about homosexuality. . . .

You can ask, is anyone—is it going to affect your ability to sit on a jury if we're talking about whether Mr. Hill suffers from a behavioral abnormality that predisposes him to engage in predatory acts of sexual violence if it involves

homosexuality. Is that going to affect anybody? No.

Move on to your next area of questioning, [counsel].

In summary, the record reflects the trial court did not completely refuse to allow Hill's attorney to question the potential jurors about homosexuality. When the trial court interrupted the questioning of the panel by Hill's attorney, Hill's attorney did not propose a different question, identify a specific area of inquiry, or attempt to phrase his questions in the manner suggested by the trial judge. *Vasquez*, 189 S.W.3d at 758. We conclude that Hill's complaint that the trial court restricted his voir dire on the topic of homosexuality was not properly preserved for review on appeal. *See id.* After considering all of the arguments Hill asserts in support of issue one, and having found them either without merit or as not having been properly preserved for purpose of appellate review, issue one is overruled.

### Issue Two

In issue two, Hill asserts the trial court committed harmful error by incorrectly defining the terms "reasonable doubt" and "behavioral abnormality" during voir dire. The State contends that by failing to timely object, Hill has waived any issue related to the definitions given during voir dire to these terms. *See* Tex. R.App. P. 33.1(a). Hill contends that he did not have to make a contemporaneous objection because "the remarks were unforeseeable and created an immediate, incurable taint." Hill also contends that his motions for mistrial, made at various times during the selection of the jurors, were sufficient to preserve his right to complain about the definitions given these terms during voir dire.

As previously discussed, shortly after Hill's attorney began to question the veni-

re, the trial court indicated that the "phrase 'beyond a reasonable doubt' is sort of self-defining." Later, after Hill's lawyer had elicited several responses from several prospective jurors about their individual interpretations of the term "beyond a reasonable doubt," another of the potential jurors stated: "I'd like to hear what the Judge .... think[s] it is." At that juncture, the trial court responded:

> THE COURT: Well, beyond a reasonable doubt is—well, it's a personal definition people have. People go through that burden every day on their own. Okay. Your grandfather is going through that burden when he—when there was a treatment that somebody is going to ask him what he had, and he decided whether he needed it. He may need more evidence, so he saw another doctor. People go buy a house. Do you know the house is proper and working and everything? Well, you have an inspection done, right? You know, I mean, you buy a large house. So those are all personal things that we are involved in every day. It just doesn't necessarily occur in the criminal justice system or in, you know, this kind of case; but it's a personal thing that everybody deals with in life. We just put strange words with it. When you get lawyers together, they are going to put words together that mean what they mean.

Hill argues that "[w]hatever reasonable doubt may be, it is surely a higher and better-defined burden than 'a personal thing that everybody deals with in life.'" Hill asserts that he was harmed because "[t]he trial court's incorrect definition prevented [Hill] from ascertaining grounds for challenges for cause or intelligently exercising his peremptory strikes."

■ Whether a trial judge made an improper comment is reviewed as a question of law. *Francis*, 46 S.W.3d at 240. A trial court has a significant degree of discretion over the manner in which it conducts a trial, and possesses "the authority to express itself in exercising this broad discretion." *Id.* at 240–41. The complaining party first must show the comments were improper, and then show that the improper comments resulted in probable prejudice to the complaining party. *Metzger v. Sebek*, 892 S.W.2d 20, 39 (Tex.App.-Houston [1st Dist.] 1994, writ denied). To preserve any error on appeal, a party must object when the comment occurs and request an instruction unless proper instruction cannot render the comment harmless. *Francis*, 46 S.W.3d at 241 (citing *State v. Wilemon*, 393 S.W.2d 816 (Tex.1965)).

■ Generally, Texas law imputes good faith to a trial judge's judicial actions in controlling a trial. *Schroeder v. Brandon*, 141 Tex. 319, 172 S.W.2d 488, 491 (1943). In this case, the potential juror solicited the judge's input, placing the trial court in a difficult position of either refusing to respond at all, or, instead choosing to provide an answer intended to give guidance on how the term operates.

Historically, courts have struggled with providing a proper definition of the term "reasonable doubt." In *Geesa v. State*, 820 S.W.2d 154, 162 (Tex.Crim.App.1991), *overruled by Paulson v. State*, 28 S.W.3d 570, 573 (Tex.Crim.App.2000), the Texas Court of Criminal Appeals adopted an instruction on "reasonable doubt." The court required that its prescribed instruction be submitted in all criminal cases even in the absence of a request to do so, and defined a "reasonable doubt" as:

> a doubt based on reason and common sense after a careful and impartial consideration of all the evidence in the case. It is the kind of doubt that would make a reasonable person hesitate to act in the most important of his own affairs.

Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs.

Nine years later, the Texas Court of Criminal Appeals found parts of the *Geesa* definition useless and reasoned that other parts of *Geesa*'s "reasonable doubt" definition suffered from a logical flaw. *Paulson v. State*, 28 S.W.3d 570, 572 (Tex.Crim. App.2000) (concluding a part of the definition suffered from the logical fallacy of affirming the consequent). The *Paulson* Court reasoned: "If a conscientious juror reads the *Geesa* charge and follows it literally, he or she will never convict anyone." *Id.* The *Paulson* Court held: "We find that the better practice is to give no definition of reasonable doubt at all to the jury." *Id.* at 573.

In this case, the examples the trial court gave the jury to explain the concept of reasonable doubt appear consistent with *Geesa*'s definition, which defined reasonable doubt as being the "kind of doubt that would make a reasonable person hesitate to act in the most important of his own affairs." *See Geesa*, 820 S.W.2d at 162. Here, Hill did not object to the two examples the trial court gave the venire to explain the type of hesitation that can arise when people make important decisions. In *Paulson*, the Court of Criminal Appeals also explained that "if both the State and the defense were to agree to give the *Geesa* instruction to the jury, it would not constitute reversible error for the trial court to acquiesce to their agreement." *Paulson*, 28 S.W.3d at 573.

Thus, defining "reasonable doubt" as constituting the kind of doubt that would make a reasonable person hesitate to act in the most important of his own affairs was not viewed by the Court of Criminal Appeals as the type of error that would deprive a defendant in a criminal case of his right to a fair trial. Because Hill did not lodge a timely objection to the court's definition, Hill must also show that a proper instruction would not have cured the problem he contends the trial court created by the examples it used in explaining the meaning of "reasonable doubt." *Francis*, 46 S.W.3d at 241.

We conclude that the trial court's errors, if any, in giving the jury examples to explain the term "beyond a reasonable doubt," were curable by further instruction. In our opinion, comparing reasonable doubt to the need for additional medical advice before deciding on a course of treatment favored Hill; defining it in this manner served to set Hill's hurdle of creating reasonable doubt fairly low. The trial court's medical analogy is consistent with Hill's final argument, during which his attorney argued that the State's physicians needed more tests and data to objectively evaluate Hill's case. In addition, the trial court's other example of a homeowner who decides to obtain an inspection before making a decision to purchase a house also favored Hill by setting the bar of creating reasonable doubt fairly low. That example of "reasonable doubt" is also consistent with the definitions of "reasonable doubt" adopted by the Texas Court of Criminal Appeals in *Geesa*.

While Hill argues that the trial court's definition harmed him, he fails to explain why the trial court's comments on reasonable doubt could not have been rendered harmless by a proper instruction.[1] We

---

1. In support of his argument, Hill cites Justice Meyers's dissenting opinion in *Young v. State*, 137 S.W.3d 65, 73 (Tex.Crim.App.2004) (Meyers, dissenting), for the proposition that courts should not require attorneys to ask the trial judge to give the jury an instruction telling the jury to disregard the trial court's comments. In Hill's case, a juror requested

hold that Hill has not met his burden to show the trial court's comments about the meaning of reasonable doubt deprived him of his right to a fair trial.

█ Hill also complains in his second issue that the trial court, during voir dire, "incorrectly defined the statutory term 'behavioral abnormality' as including homosexuality." In discussing issue one, we have described the discussion with Hill's attorney that led to the trial court's request that Hill's attorney phrase his questions around whether the jury could "give a person a fair trial if he has a behavioral abnormality based upon homosexuality."

In the context of the entire voir dire, we disagree with Hill's contention that the trial court's comment in voir dire about a "behavioral abnormality based upon homosexuality" was intended or heard by the panel as an instruction it had to follow on the meaning of the term "behavioral abnormality." As phrased, the trial court's statement in voir dire appears directed at getting Hill's attorney to rephrase a question; it does not appear intended or capable of being interpreted as an instruction to the jury on the proper legal definition of the term "behavioral abnormality." Finally, we note that the trial court's charge included the correct statutory definition for the meaning of "behavioral abnormality."[2]

█ Hill also did not object to the trial court's statement at the point that it occurred, nor did Hill, in a timely fashion, make the court aware of his complaint that the comment might be taken as the equivalent of jury instructions. Generally, we presume on appeal that juries follow the instructions provided by the trial court in the jury charge. *See Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 862 (Tex.2009) ("The jury is presumed to have followed the court's instructions.").

We conclude that a timely request for an instruction on the definition of "behavioral abnormality" would have cured the prejudice, if any, that resulted from the trial court's comments related to the trial court's attempt to get Hill's attorney to properly phrase his inquiry. Having failed to make a timely objection or a timely request for a proper instruction, Hill must demonstrate incurable harm, but has not done so. *See Francis*, 46 S.W.3d at 241. Further, in light of the instruction on the meaning of "behavioral abnormality" that the court gave, we are not persuaded that the trial court's alleged errors probably caused the rendition of an improper verdict. *See Hawley*, 284 S.W.3d at 856. Having fully considered all of Hill's issue two arguments, we overrule Hill's second issue.

---

the judge's input on defining reasonable doubt during voir dire; therefore, unlike the unforeseeable comments made by the court in *Young*, it was foreseeable that the trial court might provide the jury with possible guidance on the term "reasonable doubt." Thus, the record in this case reflects that a timely objection could have been made, but it was not. Finally, the majority in *Young* held that an instruction to disregard would have cured the error; therefore, the majority in *Young* concluded the trial court did not err in denying Young's motion for mistrial. *Id.* at 72. *Young* provides additional support for our conclusion that Hill's right to a fair trial was

not prejudiced by the guidance the trial court provided the jury on the meaning of "reasonable doubt."

2. " 'BEHAVIORAL ABNORMALITY,' means a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *See* TEX. HEALTH & SAFETY CODE ANN. § 841.002(2) (Vernon Supp. 2009).

## Issue Three

█ In issue three, Hill complains that the trial court, during voir dire, informed the jury panel that Hill had a criminal conviction of a sexual nature, and he contends the trial court's comments about social intolerance of homosexuals tacitly approved "a universal prejudice in Montgomery County." The State contends that objections were required to preserve error if the trial court's remarks were improper.

With respect to Hill's complaint that the trial court informed the jury about Hill's prior criminal conviction, the record reflects that the State's attorney, during her questioning of the panel, asked whether any of the jurors had been victims of sexual assault, and she later asked whether they knew someone who had been accused of sexual assault. Just before she finished, the State's attorney asked the panel whether there was anything else the prospective jurors thought important "for us to know." One of the jurors then asked the State's attorney whether she thought there was a difference between sexual abuse and sexual assault, and the State's attorney responded:

[STATE'S ATTORNEY]: If I confused anybody, I apologize. That might have been the way I phrased the question. When I said sexual assault, really, a sexual offense, a sexual crime, something of a sexual nature which would encompass sexual abuse, sexual assault, a crime that had a sexual undertone to it. Does that help, ma'am?

[THE COURT]: I also want to point out that these individuals may not have committed sexual assault, they could be committing an offense such as indecency with a child, and you will have all of that information given to you during the trial. So, don't just sit here and think Mr. Hill has committed a crime of sexual

assault. I don't know what Mr. Hill has done. Okay. So, that is why—that will come out in the evidence portion of the trial. But there are quite a number of sexually-related offenses that come under the [purview] of this particular statute which we're going to be hearing about. Okay. So, it's not just sexual assault. It's not involving guns or children or any of that stuff, necessarily. Okay?

Hill complains that this statement by the trial court implied that the State had already established Hill's prior conviction of a sexual offense.

Hill also complains about several of the trial court's comments pertaining to the issue of homosexuality that occurred during his attorneys' questioning of the panel. During Hill's voir dire, a juror indicated to Hill's attorney that he did not think he could be fair if the circumstances of the case concerned homosexual acts involving a child. At that point, the trial court interjected, stating:

THE COURT: See, this is where you were—remember, I said we're not going to talk about the facts of the case. We're all trying to talk about the facts of the case. We're not talking about the facts of the case. Again, the question is not about homosexuality, it's not about pedophilia, it's not about any of those factors. It's about whether or not Mr. Seth Hill suffers from a behavioral abnormality that predisposes him to engage in predatory acts of sexual violence.

VENIREPERSON: Okay. Predisposed, do you mean born with or do you mean?

THE COURT: Born with or acquired during a life time. You're going to hear—who here knows how to answer that question? Does anyone know how to answer that question right now about Mr. Hill? None, right? You need evi-

dence, right? And whether or not it involves homosexual acts, is that going to prevent somebody from sitting here and saying he has a behavioral abnormality? I can't sit on a jury if we're talking about somebody being a homosexual. He wasn't saying that. Are you saying that, ma'am, number 29?

VENIREPERSON: No. He asked me if there—

THE COURT: I understand.

VENIREPERSON: —if I had a problem with homosexuality.

THE COURT: I'm just trying to clarify the question here for the jury. Sexual crimes and sexual [sic] are very concerning to the public. I am acutely aware of that. But that's not the question in this trial. The question is whether he has a behavioral abnormality that predisposes him to engage in predatory acts of sexual violence. That's what we're talking about with Mr. Hill in this trial, okay. That's the law. That's why I want to focus on the law.

If we get to, you know, number 6, I mean, can you sit here—I mean, we know something sexual has happened in the past. We don't know what kind of sexual problems we've had in the past. There are many sexual crimes in the Penal Code that could apply to this statute. I don't know what Mr. Hill's crimes are, and neither do you. Now, after you hear them, you can make up your mind, as long as you hear the evidence; but you have to keep an open mind going in to hear the evidence.

Hill complains that these statements by the trial court also "implied that [the State] had already established [an] element of its case and thus was the functional equivalent of witness testimony." With

respect to the judge's comments about which Hill now complains, we observe that Hill's attorney did not lodge a timely objection at the point the trial court made any of these specific comments during voir dire.

 While no objections are required to preserve a complaint that a trial court has testified in a proceeding as a witness, we conclude that the comments in issue here cannot be reasonably construed as testimonial. In light of the trial court's statement that it did not know what Hill had done or what his crimes were, we further conclude the comments in issue did not disclose the trial court's opinion on matters that were later determined by the jury. *See* Tex.R. Evid. 605;[3] *see also In re M.E.C.*, 66 S.W.3d 449, 458 (Tex.App.-Waco 2001, no pet.). Finally, the court's comments in issue here occurred after the trial court had attempted, without success, to get the attorneys to ask questions directed at determining whether jurors could follow the court's instructions. A trial court has broad discretion to focus trial counsel on selecting a jury that could follow the court's instructions despite whatever their feelings are about homosexuality. *See generally Francis*, 46 S.W.3d at 241 (trial courts "may properly intervene ... to expedite the trial, and to prevent what it considers to be a waste of time."); *see also Barbee*, 192 S.W.3d at 847–48 (holding that trial court's interruptions of voir dire, under facts of that sexual predator commitment trial, did not demonstrate bias as a matter of law). Consequently, to preserve error for appellate review, Hill was required to lodge a timely objection, request, or motion that was sufficiently specific to make the trial court

---

3. "The judge presiding at the trial may not testify in that trial as a witness. No objection need be made in order to preserve the point."

aware of his complaint. *See Francis*, 46 S.W.3d at 241; *see also* TEX.R.APP. P. 33.1(a). In our opinion, with respect to these matters, Hill did not properly preserve his right to complain about the trial court's comments.

 While the trial court's comments in issue did not incurably taint the array, we again caution trial courts to exercise caution before engaging in lengthy discussions before the panel about issues that arise in voir dire. These discussions have the potential for being taken out of context and construed as exhibiting bias about the matters that were to be tried. *See Barbee*, 192 S.W.3d at 847 ("it might be wise for a trial court to avoid engaging in a discussion of how to phrase questions in front of the jury panel ..."). Nevertheless, having determined that the comments in issue did not create incurable error, we overrule issue three.

### Issue Four

 Hill complains about the trial court's failure to grant his motions for mistrial. Hill contends that his motions for mistrial should have been granted to cure the taint created by a potential juror who expressed his concern before the entire array that Hill could not receive a fair trial.[4] The State contends that Hill failed to preserve his right to appellate review of this complaint because he failed to obtain rulings on his motions for mistrial.

Hill does not contend that the trial court expressly ruled on his motions for mistrial. Instead, he contends that the trial court implicitly denied his motions for mistrial. According to Hill, the trial court's implicit denial of his motion for mistrial preserved his right to review under Rule 33.1(a)(2) of the Texas Rules of Appellate Procedure.

 After reviewing the record, we conclude that the trial court implicitly overruled Hill's motion for new trial. The record reflects that when Hill's attorney completed voir dire, the State's attorney asked the trial court for a mistrial. Initially, Hill's attorney simply agreed with the State's request, but before the parties identified their specific strikes, Hill's attorney told the trial judge, "we're asking for a mistrial." Although it appears that the trial judge considered continuing the trial and resuming on another date, the trial judge then said, "I mean, I don't know why we wouldn't just proceed with the trial." Afterwards, the trial court excused potential jurors based on their respective excuses concerning why each would be unable to attend a trial that was to start later that same week.

The record further reflects that Hill's motion for mistrial was grounded on a potential juror's comment before the entire panel in which the potential juror expressed his opinion that Hill could not receive a fair trial. After the trial court considered granting the motions for mistri-

---

4. After the trial court sustained an objection to a question that had been posed by Hill's attorney, one of the potential jurors apparently raised his hand, at which point the record reflects the following exchange:

> [HILL'S ATTORNEY]: Yes, sir.
> VENIREPERSON: I stated a previous problem I have. In my trial, what appears to be happening here happened to me, where you are getting slammed whether you know it or not. I don't know how anybody in this room could be on this jury

and feel that this is going to be a fair trial. She [referring to the State's attorney] asked questions about whether we had issues. You're asking questions about whether we had issues, and you keep getting slammed by the Judge, saying you can't ask that. You can't ask that. I think this whole thing is—if you stay here, you are crazy.
> [HILL'S ATTORNEY]: Okay.
> THE COURT: We have disagreements, sir.
> VENIREPERSON: No. I have seen bias before, sir. I'm sorry.

al, the record then reflects that it decided to require the trial to proceed. We hold that the trial court implicitly denied Hill's motion for mistrial. *See* Tex.R.App. P. 33.1(a)(2)(A) (providing that error is preserved by either an express or implicit ruling on a party's motion).

We review a trial court's ruling on a motion for mistrial for abuse of discretion. *See Lopez v. La Madeleine of Tex.*, 200 S.W.3d 854, 859–60 (Tex.App.-Dallas 2006, no pet.); *Schlafly v. Schlafly*, 33 S.W.3d 863, 868 (Tex.App.-Houston [14th Dist.] 2000, pet denied); *Till v. Thomas*, 10 S.W.3d 730, 734 (Tex.App.-Houston [1st Dist.] 1999, no pet.). An abuse of discretion occurs if the trial court's ruling was arbitrary, unreasonable, or without reference to any guiding rules and principles. *See Davis v. Fisk Elec. Co.*, 268 S.W.3d 508, 515 (Tex.2008); *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). There is no abuse, however, just because a trial court may have decided a matter, over which it has discretion, differently than would an appellate court had it made the decision in the first instance. *See Downer*, 701 S.W.2d at 242.

In the case before us, Hill's attorney chose not to object and not to request an instruction to disregard the venire member's comment after the potential juror expressed his view that Hill could not receive a fair trial. A similar situation arose in *Young v. State*, 137 S.W.3d 65, 67–72 (Tex.Crim.App.2004). In *Young*, the Texas Court of Criminal Appeals held that a trial court did not abuse its discretion by denying a motion for mistrial when any prejudice from a potential juror's answers during voir dire could have been cured had the trial court instructed the jury to disregard the juror's comments. The *Young* Court explained:

> Accordingly, when a party's first action is to move for mistrial, as this appellant's was, the scope of appellate review is limited to the question whether the trial court erred in not taking the most serious action of ending the trial; in other words, an event that could have been prevented by timely objection or cured by instruction to the jury will not lead an appellate court to reverse a judgment on an appeal by the party who did not request these lesser remedies in the trial court.

*Id.* at 70. The *Young* Court concluded that an instruction to disregard would have cured the prejudice, if any, that resulted when other members of the panel heard the comments of the potential juror whom the trial court subsequently struck for cause. *Id.* at 71. The *Young* Court reasoned that an instruction to disregard the comments in that case "may have served only to underscore any incredulity that the other prospective jurors already felt." *Id.* The *Young* Court further noted that the prospective juror that made the comments was later dismissed for cause, and then the Court observed that the prospective juror's departure at an early stage of the proceedings "may have mitigated any prejudice caused by her remarks." *Id.* Finally, the *Young* Court indicated that the prospective juror was not a witness in the trial, and the record reflected the other prospective jurors would have had little information about her, which made it "reasonable to believe that an instruction to disregard her remarks would have cured any lingering prejudice." *Id.*

Although *Young* was a criminal and not a civil case, the same appellate rule governing error preservation applies to both. *See In re C.O.S.*, 988 S.W.2d 760, 765 (Tex.1999) ("... the rule that addresses objections in the trial court, Texas Rule of Appellate Procedure 33.1, applies to

criminal as well as civil cases ..."); *see also* TEX.R.APP. P. 33.1. Therefore, we evaluate whether an instruction to disregard would have cured any prejudice that attached to the potential juror's comments. We examine the entire context of the voir dire in evaluating that issue. *See Young,* 137 S.W.3d at 71.

The record reflects that the following would have been known by the other potential jurors about the potential juror who asserted his view that Hill could not get a fair trial. Early in the voir dire, in response to the questions from the State's attorney, the potential juror had indicated that he would find it difficult to fairly consider the testimony of psychologists. Shortly after he made that comment, he told the State's attorney he had been sued at least six times in cases that involved racial claims, and that he held a bias towards minorities. Finally, when he made the comments at issue here, he clearly indicated that his view was based upon his experiences; it is further apparent from his comments that his experiences came from trials held in another state.

Having heard all of these comments, the other potential members of the jury were likely to have discounted this prospective juror's perspective because his personal experiences were from cases that were of a different type than Hill's. At that point, an instruction by the trial court to disregard the prospective juror's comments would have underscored the idea that the prospective juror's comments should not be considered in a case that involved civil commitment proceedings. *See Young,* 137 S.W.3d at 71. Second, like the prospective juror in *Young,* the trial court struck the prospective juror for cause at the conclu-

sion of the voir dire. The prospective juror's early departure from this proceeding, combined with an instruction, in our opinion would have served to further mitigate any prejudice arising from his remarks. *See id.* at 71. Finally, the entire panel had limited information about the prospective juror whose comments are in issue. In addition to the information he revealed about being biased towards minorities and having been a defendant in at least six suits that involved racial claims, the only additional information in the record about the prospective juror concerned the general nature of his occupation. Given the limited information the other prospective jurors had about the prospective juror in issue, it is reasonable to conclude that an instruction to disregard the prospective juror's remarks would have cured any possible taint created by his comments. *See id.*

In conclusion, the trial court in this case did not abuse its discretion by denying Hill's motion for mistrial when Hill chose not to request an instruction to disregard the prospective juror's objectionable comments. Because we conclude that an instruction to disregard these comments would have cured any harm attributable to the prospective juror's comments, the trial court did not abuse its discretion by denying Hill's motion for mistrial. Issue four is overruled.

### Request for Additional Jury Strikes

█ In issue five, Hill complains that the trial court refused to grant his request for additional peremptory strikes.[5] In response, the State contends that Hill failed to preserve error because he did not ask

---

5. Hill exercised ten peremptory strikes; the state exercised eight. The record does not contain an explanation about why the court gave each side more than six strikes in a case

involving only two parties. *See* TEX.R. CIV. P. 233 (providing six strikes to each party in a civil action except in multiple party cases).

the court to strike specific potential jurors for cause.

After examining the record, we find that Hill asked the court to strike all of the remaining jurors based on his claim that the entire panel had been tainted by the comments that were made by the prospective juror who had expressed his view that Hill could not get a fair trial. In our opinion, Hill's request to strike all of the members of the panel that remained after he had exercised his peremptory strikes is the equivalent of a request for a mistrial. For the same reasons as we explained in issue four, Hill's claim that the trial court erred in failing to strike the panel is without merit. TEX.R.APP. P. 47.1 (the opinion is to be as brief as practicable but is to address every issue raised and necessary to the final disposition of the appeal).

Hill did request that the trial court allow him to exercise five additional peremptory strikes. After the court had excused a number of potential jurors for cause, and even though Hill had joined the State's request to strike certain jurors, he did not ask to strike any additional prospective jurors for cause. Importantly, after requesting five additional peremptory strikes, Hill did not advise the trial court of the five jurors he would be forced to accept if he were not given additional strikes, nor did he identify the five potential jurors on whom he intended to exercise the additional strikes.

In *Hallett v. Houston Northwest Medical Center*, 689 S.W.2d 888, 890 (Tex.1985), the Texas Supreme Court explained the procedure to preserve a complaint for appeal in situations involving a trial court's refusal to grant a party's request for additional peremptory strikes. The *Hallett* Court stated, that to preserve error, a party, prior to exercising its peremptory

challenges, must "advise the trial court of two things: (1) that she would exhaust her peremptory challenges; and, (2) that after exercising her peremptory challenges, specific objectionable jurors would remain on the jury list." *Id.* at 890. The Texas Supreme Court has not relaxed the requirement that a party identify *specific* remaining objectionable panel members to preserve complaints about a court's refusal to grant a request for additional strikes. *See Cortez*, 159 S.W.3d at 90–91.

The record reflects that Hill failed to identify the specific five objectionable jurors who would remain on the panel after exhausting his peremptory challenges. Because he did not identify the remaining jurors, the trial court was deprived of the opportunity to determine whether it should strike these specific prospective jurors for cause or whether it should further question and evaluate their qualifications to serve. Moreover, without the identities of the five specific prospective jurors, we are unable to review the record and evaluate the affect, if any, of the trial court's refusal to grant Hill five additional peremptory strikes. *See Hallett*, 689 S.W.2d. at 890. We conclude that Hill has failed to preserve his complaint that he was not given a total of fifteen peremptory strikes. *See id.* Having considered all of Hill's arguments that relate to his fifth issue, issue five is overruled.

### Factual and Legal Sufficiency

In his sixth issue, Hill asserts that the evidence is legally and factually insufficient to support the verdict because the testimony of the state's expert witnesses "was conclusory, speculative, and lacking in probative value." In this case, the entire trial was based on the testimony of two witnesses, Dr. Michael Arambula[6]

---

6. Dr. Michael Arambula is a board-certified

forensic psychiatrist. He was called as a wit-

and Seth Hill. Because the sexual-predator statute employs a beyond-a-reasonable-doubt-standard, on appeal we review legal sufficiency issues by the standard of review applied in criminal cases for legal sufficiency of the evidence. *Barbee,* 192 S.W.3d at 839. With respect to whether the evidence is legally sufficient to support an affirmative jury finding, we review all of the evidence in a light most favorable to the verdict. *Id.* Thus, we review the evidence introduced to the jury during Hill's trial to decide if a rational jury could have found, beyond a reasonable doubt, that Hill has a behavioral abnormality that creates a serious difficulty in his ability to control his behavior. *See id.*

███ In a factual sufficiency review, we apply the factual sufficiency standard that is applied in criminal cases. *In re Commitment of Gollihar,* 224 S.W.3d 843, 846 (Tex.App.-Beaumont 2007, no pet.). Thus, with respect to a challenge to the factual sufficiency of evidence in cases involving a jury finding that a person is a sexually violent predator, we view all of the evidence in a neutral light and determine whether the great weight and preponderance of the evidence contradicts the jury's verdict. *Id.* (citing *Watson v. State,* 204 S.W.3d 404, 414–15 (Tex.Crim.App. 2006)). In other words, to reverse a case on a factual sufficiency challenge, the great weight and preponderance of the evidence must contradict the jury's verdict or the evidence must demonstrate that the jury's verdict is clearly wrong or manifestly unjust. *Gollihar,* 224 S.W.3d at 846 (citing *Marshall v. State,* 210 S.W.3d 618, 625 (Tex.Crim.App.2006)) (citing *Watson,* 204 S.W.3d at 414–15).

In support of the arguments advanced in Hill's sixth issue, Hill refers us to Dr.

Michael Arambula's testimony during cross-examination, where Dr. Arambula agreed that he had no evidence from any source that Hill had current fantasies or urges to engage in nonconsensual sexual acts. Relying on that isolated piece of Dr. Arambula's testimony, Hill argues that "[e]ssentially, Dr. Arambula admitted that there is no evidence to show [Hill] has a behavioral abnormality." Hill concludes, that "Dr. Arambula's opinion about [Hill]'s current behavioral abnormality was conclusory, speculative, and lacked probative value."

In reviewing a trial to resolve legal and factual sufficiency challenges, we review all of the evidence. *See Barbee,* 192 S.W.3d at 839; *Watson,* 204 S.W.3d at 415. After reviewing the entirety of evidence, the record reflects that Dr. Arambula expressed an opinion about Hill's having a behavioral abnormality that is based upon his training and experience as a psychiatrist, his interview of Hill, and his review of Hill's medical and prison records. Hill's records apparently included several psychological testing records that indicated Hill had a moderate to high risk of recidivism. Dr. Arambula diagnosed Hill with these conditions: "[P]araphilia not otherwise specified with features of sadism and exhibitionism. And then the second one was a personality disorder not otherwise specified with features of antisocial behavior. And he had a history of polysubstance abuse, but that has obviously been in remission since he's been in prison."

The inference that Hill appears to draw from Dr. Arambula's statement, that he had no evidence that Hill currently fantasized about engaging in nonconsensual sexual acts, is that Hill in fact had no such

---

ness by the state, and during his direct examination he testified that "[Hill] does have a

behavioral abnormality."

current fantasies. He further asserts that "[t]he only fact in evidence regarding [Hill]'s current sexual predisposition is that [Hill] wants to have sexual relations with his spouse." But, Hill's inference is not the only inference that can reasonably be drawn from Dr. Arambula's testimony. The jury may have attributed Dr. Arambula's lack of evidence about Hill's fantasy life to Hill's failure to be truthful, as Dr. Arambula specifically mentioned Hill's denial of having done anything wrong. The jury could also have attributed the absence of evidence about Hill's sexual fantasies to the fact that Dr. Arambula did not mention in his trial testimony that he had questioned Hill about the nature of his current fantasies. Further, the trial record does not reflect that Dr. Arambula was questioned regarding whether he believed that Hill was not currently suffering from abnormal sexual fantasies. Finally, we note that Dr. Arambula did not testify that a precondition to diagnosing a person with a sexual abnormality is that the patient must be suffering from current abnormal sexual fantasies.

In evaluating whether the evidence is legally and factually sufficient to support the jury's verdict in Hill's case, we conclude that the jury could have reasonably decided that Dr. Arambula gave no weight to the fact that Hill reported no current abnormal fantasies and that his opinions were based upon all of the information that he had gathered about Hill's past behavior.

In summary, in this case, the parties offer competing inferences that each draws from Dr. Arambula's testimony. In criminal cases, determinations about whether to believe or disbelieve any portion of a particular witness's testimony are left to the jury. *See Fuentes v. State,* 991 S.W.2d 267, 271 (Tex.Crim.App.1999); *Sharp v. State,* 707 S.W.2d 611, 614 (Tex. Crim.App.1986). In resolving differences

that arise from the various inferences that are raised by the evidence in a trial, juries are permitted to draw reasonable inferences from basic facts to ultimate facts. *See Clewis v. State,* 922 S.W.2d 126, 133 (Tex.Crim.App.1996). When faced with conflicting inferences, we presume the jury resolved the conflict in favor of the prosecution. *Turro v. State,* 867 S.W.2d 43, 47 (Tex.Crim.App.1993). In civil cases, a jury presented with conflicting evidence has several choices, including the following:

> It may believe one witness and disbelieve others. *Ford v. Panhandle & Santa Fe Ry. Co.,* 151 Tex. 538, 252 S.W.2d 561 (1952). It may resolve inconsistencies in the testimony of any witness. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792 (1951). It may accept lay testimony over that of experts. *Muro v. Houston Fire & Casualty Insurance Co.,* 329 S.W.2d 326 (Tex.Civ.App.-San Antonio 1959, writ ref'd n.r.e.).

*McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex.1986). In this case, the sole testifying expert opined that Hill suffered from a behavioral abnormality. In addition to Dr. Arambula's opinion, the jury was also provided significant information about Hill's past sexual conduct. That information provides additional legal and factual support for the jury's verdict.

Having considered Hill's arguments, and having reviewed the record in the light most favorable to the verdict, we conclude the evidence is legally sufficient to support the jury's verdict. After reviewing that same evidence in a neutral light, we find the evidence to be factually sufficient to support the jury's verdict, and we further conclude that the jury's verdict is not against the great weight and preponderance of the evidence. Issue six is overruled.

Motion for Directed Verdict

In Hill's seventh issue, he asserts the trial court erred in denying his motion for directed verdict. A motion for directed verdict is a matter-of-law motion that is used to challenge the legal sufficiency of the evidence. *See City of Keller v. Wilson,* 168 S.W.3d 802, 823 (Tex.2005). In analyzing Hill's sixth issue, we concluded that the evidence was legally sufficient to support the jury's verdict. That conclusion also resolves issue seven. We hold the trial court did not err in denying Hill's motion for directed verdict. *See* Tex.R.App. P. 47.1. Issue seven is overruled.

We have considered and overruled all of Hill's issues. Accordingly, we affirm the judgment and order of the trial court.

AFFIRMED.