

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-23-00094-CV

**IN RE** The **COMMITMENT** of Gerardo **SAUCEDO**

From the 38th Judicial District Court, Uvalde County, Texas
Trial Court No. 2022-04-34263-CV
Honorable Camile Glasscock Dubose, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:        Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice
                Irene Rios, Justice

Delivered and Filed: June 26, 2024

AFFIRMED

Appellant Gerardo Saucedo appeals the civil commitment order committing him for treatment and supervision as a sexually violent predator pursuant to the Texas Civil Commitment of Sexually Violent Predators Act. *See generally* TEX. HEALTH & SAFETY CODE ANN. ch. 841. A jury found beyond a reasonable doubt that Saucedo is a sexually violent predator, and the trial court entered a final judgment and commitment order committing Saucedo for treatment and supervision. *See id.* § 841.081. Saucedo argues the trial court erred by denying his motion to quash the venire panel after unidentified venire members potentially saw him shackled in the courtroom prior to the beginning of voir dire. We affirm.

BACKGROUND

Prior to the State filing its petition asserting that Saucedo is a sexually violent predator, Saucedo was convicted and sentenced for committing three sexually violent offenses. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.041. At the time of Saucedo's civil commitment trial, Saucedo was still incarcerated serving the remainder of his sentence for his last sexually violent offense. *See id.* § 841.061.

During a recess after the trial court administered the oath to the venire panel and excused several venire members for various reasons, Saucedo's trial counsel moved to quash the venire panel. The following transpired:

Defense: [S]hortly before the panel was filed in[,] Mr. Saucedo was brought into the courtroom wearing shackles and shackles on his ankles. It was right in front of the gallery and clearly visible to the venire panel. I would ask the [c]ourt to please quash the venire panel. I believe they were tainted with the presentation of [Saucedo] wearing the shackles.

State: I would simply argue that as [trial counsel] knows, they are not in yet. They are quickly going to learn he was in prison. We had a case where the guy was brought in [] jail clothes and they were going to –

Court: It is unfortunate. I apologize. The turnover rate at the jail facility is high and to keep people abreast of what their job duties are is difficult. I will allow you to address it in voir dire. The motion is denied.

After denying Saucedo's motion to quash, the trial court continued voir dire. The trial court explained to the venire panel that for a defendant to be found a sexually violent predator, the defendant must have been previously convicted of at least two sexually violent offenses and have served prison time for at least one of them, thereby, apprising the panel that Saucedo had been incarcerated. As acknowledged by Saucedo in a post-trial motion and in his appellate brief, Saucedo's counsel did not ask the venire panel any questions pertaining to Saucedo being shackled when he was brought into the courtroom prior to the start of voir dire. The jury was subsequently empaneled.

At the conclusion of the trial, the jury found beyond a reasonable doubt that Saucedo is a sexually violent predator, and the trial court entered an order of commitment. *See id.* § 841.081. Saucedo filed a motion for new trial and asserted, among other things, that his due process rights were violated when he was brought into the courtroom wearing shackles where potential venire members were present. Saucedo's motion for new trial was overruled by operation of law, and this appeal ensued.

### VENIRE PANEL VIEWING SAUCEDO IN SHACKLES

In his sole issue, Saucedo contends the trial court abused its discretion in denying his motion to quash the venire panel.

The State, on the other hand, argues Saucedo failed to preserve his issue for review. It also argues that if Saucedo preserved the issue, he cannot show the trial court abused its discretion in denying his motion to quash the venire panel or that he was harmed.

### PRESERVATION

As stated above, the State initially claims Saucedo waived his issue because he did not request a curative instruction after the trial court overruled his motion to quash. Citing *Young v. State*, 137 S.W.3d 65 (Tex. Crim. App. 2004), the State argues that "[f]ailing to request an instruction waives appellate review when an instruction could have cured the alleged error." Initially, we note that while some appellate courts have applied *Young* in civil contexts—including in a sexually violent predator commitment case—the Texas Supreme Court has yet to apply *Young* to any civil cases. *See, e.g., S.A., Jr. v. Tex. Dep't of Family & Protective Services*, No. 03-17-00790-CV, 2018 WL 1096012, at *4 (Tex. App.—Austin 2018, no pet.) (mem. op.); *In re Commitment of Hill*, 308 S.W.3d 465, 480–81 (Tex. App.—Beaumont 2010), *rev'd on other grounds*, 334 S.W.3d 226 (Tex. 2011). Regardless, the State has misconstrued the holding in *Young*. The *Young* court addressed whether the defendant waived appellate review when he moved

for a mistrial without first making an objection and requesting an instruction to disregard. Specifically, the court stated:

> [T]he traditional and preferred procedure for a party to voice its complaint has been to seek them in sequence—that is, (1) to object when it is possible, (2) to request an instruction to disregard if the prejudicial event has occurred, and (3) to move for a mistrial if a party thinks an instruction to disregard was not sufficient. However, this sequence is not essential to preserve complaints for appellate review. The essential requirement is a timely, specific request that the trial court refuses.

*Young*, 137 S.W.3d at 69 (citations omitted).

Here, while Saucedo did not request an instruction to disregard, Saucedo timely moved to quash the venire panel and the trial court refused such request. Accordingly, Saucedo met *Young*'s "essential requirement" for preservation as soon as he moved to quash the venire panel and obtained an adverse ruling on it. *See id*.

We conclude Saucedo sufficiently preserved his issue for our review.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING SAUCEDO'S MOTION TO QUASH THE VENIRE PANEL

We review the trial court's denial of Saucedo's motion to quash the venire panel under an abuse of discretion standard. *See Mendoza v. State*, 552 S.W.2d 444, 447 (Tex. Crim. App. 1977); *see also In re Commitment of Talley*, 522 S.W.3d 742, 747 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Generally, to demonstrate a trial court abused its discretion in denying a defendant's motion to quash, the defendant must prove venire members were influenced to prejudice the defendant because of the alleged wrong. *See Callins v. State*, 780 S.W.2d 176, 188 (Tex. Crim. App. 1986); *see also Sanchez v. State*, 769 S.W.2d 348, 352 (Tex. App.—San Antonio 1989, no pet.) ("The burden is on a defendant to show abuse of discretion by the trial court in denying the motion to quash a jury panel because of possible prejudice to a defendant."). Here, Saucedo contends the trial court abused its discretion in denying his motion to quash because the trial court,

in effect, disregarded the venire panel seeing him enter the courtroom in shackles prior to voir dire. Saucedo cites *Deck v. Missouri* in support of his proposition. 544 U.S. 622 (2005).

In *Deck*, the United States Supreme Court considered "whether shackling a convicted offender during the penalty phase of a capital case violates the Federal Constitution." *See id*. at 624. The Court first determined that, during the guilt/innocence phase of a criminal trial, "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Id*. at 629. The Court then identified "three fundamental legal principles" that must be given effect when determining whether a criminal defendant has a right to remain free of physical restraints that are visible to the jury: (1) the defendant is innocent until proven guilty, (2) the defendant has a constitutional right to counsel, and (3) the judicial process should be a dignified process. *Id.* at 630–32. In further explaining these principles, the Court explained that visible shackling undermines the presumption of innocence and the related fairness of the factfinding process in criminal trials. *See id.* at 630. The Court also noted that the use of physical restraints can diminish the defendant's right to counsel by interfering with a defendant's ability to communicate with counsel and participate in his defense. *See id.* at 631. Also, the Court added the dignity of the judicial process should include the respectful treatment of defendants. *See id*. The Court concluded that "[t]he considerations that militate against the routine use of visible shackles during the guilt phase of a criminal trial apply with like force to penalty proceedings in capital cases." *Id*. at 632.

Saucedo's case is notably distinguishable from *Deck* in two regards. First, commitment proceedings are civil in nature. *See In re Commitment of Fisher*, 164 S.W.3d 637, 637, 656 (Tex. 2005). Second, as the State notes, "Saucedo produced no proof that any venire [member] actually saw [] him in shackles."

Saucedo recognizes Texas courts have yet to consider whether shackling a respondent in a civil commitment case, absent a specific trial court finding that the shackles are necessary, is an abuse of discretion. However, Texas courts have addressed situations where juries observed civil litigants wearing jail clothing and restraints. These cases are instructive and help guide our analysis.

In *In re K.R.*, a parental termination case, the trial court ordered that the incarcerated father, who was allowed to attend trial, remain in handcuffs during trial over the objection of all the trial participants. 63 S.W.3d 796, 798 (Tex. 2001), *cert. denied*, 536 U.S. 941 (2002). However, the trial court instructed the jury that "you're not to infer anything from the fact that he's handcuffed, other than the fact that he's been convicted of a crime which causes his incarceration." *Id*. The Texas Supreme Court noted that in the criminal context, the United States Supreme Court has admonished that shackling a criminal defendant in the sight of the jury is a "'last resort,'" and the Texas Court of Criminal Appeals has stated that "shackling should be avoided 'except where there has been a showing of exceptional circumstances or a manifest need for such restraint.'" *Id*. (quoting *Illinois v. Allen*, 397 U.S. 337, 344 (1970); *Long v. State*, 823 S.W.2d 259, 282 (Tex. Crim. App. 1991)). The court concluded that the trial court erred by ordering the defendant to be handcuffed during trial but that the error was subject to a harmless error review. *See id*. at 800. The court determined that no harmful error occurred because (1) the evidence supporting termination was clear and convincing, (2) the venire panel indicated that they would not reach a decision based solely on the father's conviction and sentence, and (3) the court presumed the jury could follow the trial court's instruction and "draw no improper conclusions from seeing [the father] sitting in handcuffs." *Id*. at 800–01 ("Nothing in the record even hints that [the jury] would have reached a different verdict had they not seen [the father] in shackles."); *see also In re L.A.*, No. 02-07-00236-CV, 2008 WL 2168017, at *9–10 (Tex. App.—Fort Worth May 22, 2008, no

pet.) (mem. op.) (applying *In re K.R.* to similar facts and concluding "nothing in the record suggests that the jury would have arrived at a different verdict had they not seen [the father] in shackles and jail garb").

Additionally, in *Carson v. Gomez*, an inmate who sued prison employees sought to discharge a jury panel that saw him enter the courtroom while handcuffed and wearing prison clothing. 14 S.W.3d 778, 779 (Tex. App—Houston [1st Dist.] 2000, pet. denied). The trial court overruled the inmate's motion but advised that it would grant the motion later if the venire panel indicated that it had been prejudiced by the inmate's appearance. *See id*. The First Court of Appeals reiterated that "except for good cause, no one should be tried while restrained, and if one is, the judge should try to minimize the potential for harm." *Id*. at 780 (emphasis omitted). However, the court added, "[a]t most, the record shows that jurors saw appellant—who testified he was an incarcerated felon—handcuffed momentarily while in court." *Id.* Generally, courts should avoid restraining inmates during trial "but its occurrence does not always require reversal." *Id*. The court concluded that "[b]ecause the presumption of innocence was not at stake and because the evidence naturally showed that appellant was imprisoned, we hold he was not harmed by having been seen once in handcuffs shortly before trial." *Id*. In this regard, the court noted that the jury's view of the inmate in handcuffs was the result of his transfer to court while in custody. *See id*. The court further noted that because the record supports that the handcuffs were removed during trial, this would likely permit the jury to assume that the inmate posed no danger. *See id*.

Here, there is no indication that the trial court ordered Saucedo be restrained upon entering the courtroom, and there is no evidence Saucedo was restrained during trial. Thus, Saucedo's restraints were likely the byproduct of his recent transfer while in custody, rather than an order by the trial court. *See id*. Trial courts, however, should strive to prevent members of the venire panel

from seeing a litigant in jail clothing or restraints "except for good cause shown." *See id*. In this regard, courts "should try to minimize the potential for harm." *Id*.

Here, the potential exposure to the future venire panel happened prior to trial rather than during trial, a circumstance that the First Court of Appeals found to be significant in *Carson*. *See id*. Also, the trial court was aware that, because of the nature of the proceedings, the jury would soon learn that Saucedo was in prison. *See id.*; *see also U.S. ex rel. Stahl v. Henderson*, 472 F.2d 556, 557 (5th Cir. 1973) ("No prejudice can result from seeing that which is already known."). Additionally, the trial court likely considered measures Saucedo could have taken to mitigate the situation, including asking voir dire questions about the incident or asking for the trial court to instruct the jury members to disregard what they might have seen. As a result of these considerations, we conclude that the trial court did not abuse its discretion by denying Saucedo's motion to quash the venire panel.

### HARM ANALYSIS

Nevertheless, even if we were to assume the trial court abused its discretion, we determine Saucedo has not shown harm.

Saucedo has failed to identify any venire members who saw him in shackles. *See Sanchez*, 769 S.W.2d at 352 (concluding Sanchez failed to demonstrate harm because he could not identify another juror who heard the prejudicial remarks and was thereby influenced to hold them against Sanchez); *see also generally Bell v. State*, 415 S.W.3d 278, 283 (Tex. Crim. App. 2013) (determining defendant failed to demonstrate harm because he did not show the jury saw his shackling or that it heard any rattling of the chain during trial). Further, Saucedo did not ask questions of the venire panel to identify any members who may have seen him shackled. As such, Saucedo has failed to demonstrate he was harmed by the trial court's ruling on his motion to quash the venire panel. *See Berkley v. State*, 298 S.W.3d 712, 713 (Tex. App.—San Antonio 2009, pet.

ref'd) (concluding Berkley failed to meet his burden to demonstrate harm because Berkley could not identify other panel members who heard the prejudicial remark or were influenced by it to Berkley's prejudice).

Moreover, Saucedo's trial was civil in nature, and thus, no presumption of innocence was infringed. *See Carson*, 14 S.W.3d at 780. This record does not show Saucedo was restrained during trial; rather, the record only shows he entered the courtroom in shackles. *See id*. Additionally, during opening statements, the parties mentioned Saucedo's present incarceration. Saucedo testified acknowledging he was currently incarcerated and discussed his plans after his release. Even if members of the jury had seen Saucedo in shackles before trial commenced, this would not amount to harm under the facts of this case because both Saucedo and the State apprised the jury of Saucedo's incarceration. *See id.*; *see also Henderson*, 472 F.2d at 557. On this record, Saucedo has not demonstrated harm.

Accordingly, we overrule Saucedo's sole appellate issue.

Irene Rios, Justice